860 F.2d 602
 57 USLW 2281
 ACCOUNTANT'S SOCIETY OF VIRGINIA; Robert Grille; Samuel A.
Braunstein; Lewis A. Marsh; Charles R. Ward,
Sr.; Ralph Louis Mirman, Plaintiffs-Appellants,
v.
Earl J. BOWMAN; John R. Fisher, III; Raymond L. Slaughter,
Sr.; Archie Glaspy, Jr.; G. Bernard Smith;
Marvin W. Wingfield, Ph.D.; Joan D.
Aaron; David R. Hathcock,
Defendants-Appellees,
Virginia State Board of Accountancy; C. Hunter Jones; John
W. Kerr; John B. Sperry; Gerald G. Thompson, Defendants.
 No. 88-2050.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 21, 1988.
Decided Oct. 27, 1988.
 
 Gerald J. Thain (University of Wisconsin Law School, Madison, Wis., Steven W. Pearson, David B. Irvin, Hazel, Thomas, Fiske, Beckhorn & Hanes, P.C., Richmond, Va., on brief), for plaintiffs-appellants.
 Patrice Taylor Johnson, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., Richmond, Va., on brief), for defendants-appellees.
 Before PHILLIPS and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Accountant's Society of Virginia, Inc., and several accountants appeal from a decision of the district court denying declaratory and injunctive relief, and holding that certain provisions of the Code of Virginia regulating the accounting profession are constitutional. Accountant's Society of Virginia, Inc. v. Bowman, No. 84-0376-R (E.D.Va. Feb. 1, 1988). We affirm.
 
 
 2
 * Accountant's Society of Virginia, Inc., appellant, is an organization composed of practicing accountants, most of whom are not licensed certified public accountants (CPAs). The individual appellants are accountants who practice in Virginia and are not licensed CPAs. The appellees include the members of the Virginia State Board of Accountancy and the Director of the Virginia Department of Commerce. Members of the Board are charged by statute with the responsibility of licensing and regulating the profession of accountancy in Virginia. Va.Code Ann. Secs. 54-102.24--54-102.35 (Supp. I 1987 & Supp. II 1988). The Board can license only certified public accountants. Secs. 54-102.25 & 102-28.
 
 
 3
 The Code restricts the professional tasks that accountants who are not licensed CPAs may perform by prohibiting them from using certain terms in the documents they prepare for their clients. Unlicensed accountants may not give an "assurance", as that term is defined by statute, regarding a financial statement.[1] In connection with the preparation of financial statements, they are barred from using the following terms: "generally accepted accounting standards," "public accountancy standards," "public accountancy principles," "generally accepted auditing principles," and "generally accepted auditing standards." Non-CPAs may not state that any report they have prepared varies from, or conforms to, such standards. The Act also prohibits accountants who are not licensed from using the words "audit," "audit report," "independent audit," "attest," "attestation," "examine," "examination," "opinion," or "review" in a "report."[2] Sec. 54-102.31(C) & (D).
 
 II
 
 4
 The accountants first claim that sections 54-102.31(C) & (D) are unconstitutional because, by forbidding non-CPAs from describing the "principles" and "standards" they use in compiling financial statements and by preventing non-CPAs from identifying their reports by certain technical labels, the statute impermissibly regulates their commercial speech. The accountants assert that the district court erroneously relied upon Justice White's concurrence in Lowe v. S.E.C., 472 U.S. 181, 211, 105 S.Ct. 2557, 2573-74, 86 L.Ed.2d 130 (1985) (White, J., concurring), to hold that the statutory restrictions are merely incidental to the regulation of a profession, and are thus constitutional.
 
 
 5
 To be sure, the first amendment protects commercial speech. See Central Hudson Gas & Electric Corp. v. Public Service Comm'n, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980); Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). The Supreme Court, however, has long recognized that governmental regulation of the professions is constitutional if the regulations " 'have a rational connection with the applicant's fitness or capacity to practice' the profession." Lowe, 472 U.S. at 228, 105 S.Ct. at 2582 (White, J., concurring) (quoting Schware v. Board of Bar Examiners, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957); see also Virginia State Board of Pharmacy, 425 U.S. at 770, 96 S.Ct. at 1829-30.
 
 
 6
 Professional regulation is not invalid, nor is it subject to first amendment strict scrutiny, merely because it restricts some kinds of speech. Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 456-57, 98 S.Ct. 1912, 1918-19, 56 L.Ed.2d 444 (1978). As the Supreme Court has emphasized, " 'it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.' " Ohralik, 436 U.S. at 456, 98 S.Ct. at 1918 (quoting Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 502, 69 S.Ct. 684, 690-91, 93 L.Ed. 834 (1949)). A statute that governs the practice of an occupation is not unconstitutional as an abridgment of the right to free speech, so long as "any inhibition of that right is merely the incidental effect of observing an otherwise legitimate regulation." Underhill Assoc. v. Bradshaw, 674 F.2d 293, 296 (4th Cir.1982).
 
 
 7
 The task, then, is locating the point at which "a measure is no longer a regulation of a profession but a regulation of speech or of the press." Lowe, 472 U.S. at 230, 105 S.Ct. at 2583 (White, J., concurring). Justice White's concurrence provides sound, specific guidelines for determining that point.
 
 
 8
 In Lowe, the Supreme Court held that the Investment Advisers Act of 1940 exempted the publisher of an investment newsletter from registration with the Securities and Exchange Commission. Justice White concurred on first amendment grounds. He observed that "[o]ne who takes the affairs of a client personally in hand and purports to exercise judgment on behalf of the client in the light of the client's individual needs and circumstances is properly viewed as engaging in the practice of a profession." Lowe, 472 U.S. at 232, 105 S.Ct. at 2584. In such a situation, "the professional's speech is incidental to the conduct of the profession," and government regulation "limiting the class of persons who may practice the profession ... cannot be said to have enacted a limitation on freedom of speech or the press subject to First Amendment scrutiny." 472 U.S. at 232, 105 S.Ct. at 2584. The key to distinguishing between occupational regulation and abridgment of first amendment liberties is in finding "a personal nexus between professional and client." 472 U.S. at 232, 105 S.Ct. at 2584.
 
 
 9
 Where the personal nexus between professional and client does not exist, and a speaker does not purport to be exercising judgment on behalf of any particular individual with whose circumstances he is directly acquainted, government regulation ceases to function as legitimate regulation of professional practice with only incidental impact on speech; it becomes regulation of speaking or publishing as such, subject to the First Amendment....
 
 
 10
 472 U.S. at 232, 105 S.Ct. at 2584.
 
 
 11
 Here, the accountants attempt to portray the preparation of financial reports by non-CPAs as analogous to speech or publications addressing the general public. They minimize the existence of any client relationship between non-CPAs and the businesses for which they perform services and prepare reports, asserting instead that "no personalized advice is given, either to any third party or to the client." Reply Brief at 7.
 
 
 12
 But non-CPAs undoubtedly perform personal services for their clients. They exercise their professional judgment in making individualized assessments of each client's financial situation, for which they are compensated by the client. While the information compiled by accountants and bookkeepers may be directed at third parties, it is not aimed at the general public. Rather, such information typically is used by lenders and insurers and has been prepared and circulated for the pecuniary benefit of the client, who has paid the accountant to prepare it. Clearly the relationship between accountant and client gives rise to "a personal nexus between professional and client." Lowe, 472 U.S. at 232, 105 S.Ct. at 2584. The statute in question restricts only accountants' communications with and on behalf of their clients, as a means of regulating the professional activities of non-CPAs.
 
 
 13
 Accordingly, we hold that the restrictions imposed by Va.Code Ann. Secs. 54-102.31(C) & (D), on the use of certain terms in the work product of non-CPAs, amount to the permissible regulation of a profession, not an abridgment of speech protected by the first amendment. The district court correctly concluded that Secs. 54-102.31(C) & (D) are constitutional.
 
 III
 
 14
 The Code also restricts the words unlicensed accountants may use in holding themselves out to the public. A non-CPA may not "describe himself as or assume" any of several "titles or designations," including "certified public accountant, CPA, public accountant, PA, certified accountant, CA, chartered accountant, licensed accountant, LA, registered accountant, RA, independent auditor, or auditor." Sec. 54-102.31(B).
 
 
 15
 The accountants challenge the district court's determination that Virginia constitutionally may prohibit non-CPAs from assuming the title "public accountant" and its abbreviation "PA." They argue that the district court erred in holding without evidentiary support that those terms may be restricted because their use by non-CPAs might be misleading. Restriction is only permitted, they argue, upon proof that the term in question is specifically and materially misleading to reasonable consumers. Further, appellants suggest that, even if the forbidden terms are found to be misleading, they cannot be banned if the less restrictive alternative of additional explanatory language is available.
 
 
 16
 We agree with the district court that the words "public accountant" and "PA" are business or trade labels, analogous to advertising. Unlike the restricted vocabulary discussed in Part II, these words are not communications between a professional and his client, and may not be restricted as an incidental part of the regulation of a profession. Rather, these words are commercial speech.
 
 
 17
 Notwithstanding the initial classification of a communication as commercial speech, it falls outside the protection of the first amendment, if the communication is false, deceptive or misleading. In re R.M.J., 455 U.S. 191, 200, 102 S.Ct. 929, 935-36, 71 L.Ed.2d 64 (1982). Thus, appellants' assertion that a search for the least restrictive means of regulation is required here, cannot withstand analysis. If the use of the title "public accountant" by non-CPAs is misleading, it may be prohibited by the state, because the first amendment does not protect misleading commercial speech. R.M.J., 455 U.S. at 203, 102 S.Ct. at 937-38. In Harry and Bryant Co. v. F.T.C., 726 F.2d 993, 1001-02 (4th Cir.1984), this court held that the first amendment "poses no barrier to any remedy ... reasonably necessary to the prevention of future deception" by the use of commercial speech.
 
 
 18
 The state has an interest in assuring the public that only persons who have demonstrated their qualifications as certified public accountants and received a license can hold themselves out as certified public accountants. The Supreme Court has held that "advertising for professional services" may be prohibited "when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse." R.M.J., 455 U.S. at 203, 102 S.Ct. at 937. We believe that use of the title "public accountant" by a non-CPA fairly could be characterized as inherently misleading, given the possibility, accurately stated by the district court, that "some members of the public would believe the title ... has the state's imprimatur."
 
 
 19
 The similarity of the title "public accountant" to "certified public accountant" is self-evident. In defining "misleading" for the purpose of the regulation of commercial speech, the Supreme Court has explained that when the possibility of deception is self-evident, the state need not survey the public. Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 652-53, 105 S.Ct. 2265, 2282-83, 85 L.Ed.2d 652 (1985). Accordingly, the Board was not required to make an elaborate evidentiary showing at trial in order to establish the misleading nature of the regulated speech. The ban on the use of "public accountant" or "PA" by unlicensed accountants, in Sec. 54-102.31(B), is a constitutionally permissible regulation of misleading commercial speech, as the district court correctly held.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 " 'Assurance ' means any act or action, whether written or oral, expressing an opinion or conclusion about the reliability of a financial statement or about its conformity with any financial accounting principles or standards." Sec. 54-102.25
 
 
 [2]
 " 'Report ' or 'reports ' when used in the reference to financial statements, means an opinion or disclosure of opinion or other form of language or representation which states or implies any form of assurance or denial of assurance." Sec. 54-102.25