United States Court of Appeals, Eleventh Circuit.

No. 96-8095.

Mohamed I. BAH, Plaintiff-Appellee,

v.

CITY OF ATLANTA, Defendant-Appellant.

Jan. 22, 1997.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:95-cv-2641-WBH), Willis B. Hunt, Jr., Judge.

Before ANDERSON and CARNES, Circuit Judges, and CUDAHY[*], Senior Circuit Judge.

PER CURIAM:

Mohamed I. Bah brought this action against the City of Atlanta, alleging that the City's ordinance establishing a dress code for drivers of vehicles for hire is unconstitutional. The City appeals from the district court's grant of a preliminary injunction enjoining enforcement of the dress code.

I. FACTS AND PROCEDURAL HISTORY

In 1993, the City's Bureau of Vehicles for Hire created a task force to revise the Vehicles for Hire chapter of the City's Code of Ordinances. Over almost a year and a half, the task force met often to discuss problems in the vehicle for hire industry, as well as possible solutions to those problems. The task force made recommendations to the City, including a recommendation to amend the dress code for drivers of vehicles for hire.

On July 5, 1995, the Atlanta City Council adopted a version of the task force's recommendations, including the dress code. The

---

[*]Honorable Richard D. Cudahy, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

new dress code requirement provides that:

> In order to maintain a permit to drive a vehicle for hire a driver must ... [w]ear proper dress while operating a vehicle for hire. As used herein, the term "proper dress" shall mean shoes which entirely cover the foot (no sandals) and dark pants to ankle length or dark skirt or dress and solid white or light blue shirt or solid white or light blue blouse with sleeves and folded collar. Shirts or blouses shall be tucked in. No tee-shirts or sweatshirts shall be worn. If a hat is worn, it shall be a baseball-style cap with an Atlanta or taxicab theme. "Proper dress" shall also mean any uniform adopted by the company and approved by the Bureau. Clothing shall not be visibly soiled.

Atlanta Code of Ordinances ("Code"), Section 14-8005(d)(2).[1]

Bah, a taxicab driver, filed this lawsuit on October 19, 1995, after being cited for a violation of the dress code. His complaint contends that the dress code is unconstitutional, because it violates the Equal Protection Clause and his First Amendment rights of religion and free speech. Bah requested a temporary restraining order, which the district court converted into a motion for preliminary injunction.

After a hearing on the motion for preliminary injunction, the district court granted it and enjoined the City from enforcing the dress code. The court held that the dress code violated the Equal Protection Clause because it was not rationally related to a legitimate government objective.[2] The district court said that the

---

[1] The Atlanta Code of Ordinances was recodified with a new numbering system effective January 1, 1996. The proceedings in the district court were conducted when the old numbering system was in place, and to avoid confusion we, too, will follow that old numbering system.

[2] The district court also held that the dress code was an arbitrary exercise of police power. This holding was based upon the district court's finding that the dress code was not rationally related to a legitimate government objective, the same basis for its equal protection holding. We will subsume discussion of the police power holding into our discussion of the

City had put forth two justifications for the dress code: (1) the need to improve public safety, and (2) the need to identify unlicensed or "gypsy" taxicab drivers. The court rejected the first reason because it found no evidence that safety was a problem in taxicabs or that the dress code would improve safety in taxicabs. The court rejected the second reason after finding that the clothing prescribed by the dress code was so common that it would not help to distinguish gypsy taxicab drivers from licensed ones.

The district court did not address another justification the City proffered for the dress code. In its response to the motion for preliminary injunction, the City explained that drivers of vehicles for hire are often a visitor's first contact with the City of Atlanta, which is why many of the drivers refer to themselves as "ambassadors" for the City. The City contended that, for obvious reasons, it is in the City's interest that its "ambassadors" present a safe and professional image to all their passengers. The dress code would, the City argued, reduce the fears of passengers and improve the City's image.

Because the district court found the dress code unconstitutional on equal protection grounds, it did not address Bah's First Amendment arguments. The City appeals from the grant of preliminary injunctive relief. *See* 28 U.S.C. § 1292(a)(1).

## II. STANDARD OF REVIEW

We review a district court's decision to grant a preliminary injunction for abuse of discretion. *Teper v. Miller,* 82 F.3d 989,

equal protection holding.

993 (11th Cir.1996) (citing *Haitian Refugee Ctr., Inc. v. Baker,* 953 F.2d 1498, 1505 (11th Cir.), *cert. denied,* 502 U.S. 1122, 112 S.Ct. 1245, 117 L.Ed.2d 477 (1992)).  A district court necessarily abuses its discretion when it bases a ruling on an erroneous view of the law.  *E.g., Jones v. International Riding Helmets,* 49 F.3d 692, 694 (1995).  Any legal determinations made by the district court in ruling on a preliminary injunction are reviewed *de novo. Teper,* 82 F.3d at 993.

### III. DISCUSSION

The district court granted the preliminary injunction based upon its determination that the dress code violated the Equal Protection Clause.  Under an equal protection analysis, "unless the case involves a suspect class or a fundamental right, the Equal Protection Clause requires only that the classification be rationally related to a legitimate state interest."  *Panama City Medical Diagnostic Ltd. v. Williams,*  13 F.3d 1541, 1545 (11th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 93, 130 L.Ed.2d 44 (1994) (citing *Nordlinger v. Hahn,* 505 U.S. 1, 10-11, 112 S.Ct. 2326, 2331-32, 120 L.Ed.2d 1 (1992) and *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439-41, 105 S.Ct. 3249, 3254-55, 87 L.Ed.2d 313 (1985)).  Bah does not contend on appeal that the dress code burdens a fundamental right or targets a suspect class.  Both Bah and the City agree that rational basis is the appropriate level of scrutiny.

In a rational basis analysis, the legislative enactment carries a "strong presumption of validity."  *F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 314, 113 S.Ct. 2096, 2101-02,

124 L.Ed.2d 211 (1993) (citing *Lyng v. Int'l Union, United Auto. Workers,* 485 U.S. 360, 370, 108 S.Ct. 1184, 1192, 99 L.Ed.2d 380 (1988)). Review of enactments must be "a paradigm of judicial restraint." *Beach Communications,* 508 U.S. at 314, 113 S.Ct. at 2101. "[T]hose attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." *Id.* at 315, 113 S.Ct. at 2101 (citation omitted); *Panama City,* 13 F.3d at 1546. The legislature need not actually articulate its reasons for enacting a statute. *Heller v. Doe by Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993) (citation omitted). In fact, "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Beach Communications,* 508 U.S. at 315, 113 S.Ct. at 2102. "In other words, a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Id.*

Following these decisional directives, we readily conclude that the district court erred in finding that the dress code is not rationally related to a legitimate government interest. With regard to the public safety purpose, the district court inappropriately placed the burden on the City to come forward with evidence showing that public safety in taxicabs was a problem, which is not how the burdens are allocated in rational basis analysis.

Moreover, even if the district court was correct in rejecting the two reasons it discussed—public safety and identification of

gypsy taxicab drivers—there is another reason for the dress code that is rationally related to a legitimate government interest. As the City explained in the district court and this Court, the dress code is rationally related to its legitimate interest in promoting a safe image. Drivers of vehicle for hire, particularly taxi cab drivers, are often among the first people that out-of-town visitors encounter. Such visitors often find themselves getting into a vehicle for hire driven by a total stranger, sometimes at night and sometimes while they are alone. It is in the City's interest to promote a safe appearance and image, and a rational way to do that is by prescribing that its self-styled "ambassadors" wear innocuous, conventional, relatively uniform clothing.

Bah also argues that the dress code is unconstitutional because it applies only to drivers of vehicles for hire, while other occupations licensed by the City—persons at food establishments, bellhops, door-to-door salespersons and operators of motion picture theaters—are not subject to a dress code.[3] We reject that argument. The differential treatment accorded drivers of vehicles for hire is justifiable because they are often the initial contact for visitors to the City. Moreover, visitors do not get into automobiles alone with bellhops, servers at restaurants, and the like. The City could rationally decide that it has a greater interest in having drivers of vehicles for hire

_____

[3]An examination of the Code provisions cited by Bah indicates that the licensing requirement for persons in food establishments was repealed in 1978, Code Section 14-6144, and that the licensing requirement for operators of motion picture theaters is more concerned with the safety of the theater than with the appearance of the operator, Code Sections 14-3081 and -3082.

appear safe and presentable, which is accomplished through the dress code.

For these reasons, we conclude that the dress code does not violate the Equal Protection Clause.  We decline to reach Bah's First Amendment arguments, because the district court has not yet addressed them.

## IV. CONCLUSION

We REVERSE the district court's grant of the preliminary injunction and REMAND for further proceedings consistent with this opinion.