THE NORTH CAROLINA STATE BAR, PLAINTIFF v. K.E. KRISPEN CULBERTSON, ATTORNEY, DEFENDANT

No. COA05-1076

(Filed 4 April 2006)

## 1. Attorneys— disciplinary hearing—inherently misleading communications—letterhead and website

The whole record test revealed that the Disciplinary Hearing Committee of the North Carolina State Bar (DHC) did not err by concluding that defendant attorney's statements on his letterhead and website that he was "published in Federal Law Reports, 3d series" were false and misleading communications under the North Carolina Revised Rules of Conduct, Rules 7.1 and 7.5, because: (1) contrary to defendant's assertion, where the possibility of public deception is self-evidence, DHC is not required to survey the public to determine whether the communication has a tendency to mislead; (2) while defendant's name and his appearance as counsel for a party is "published" in the official court's reports, nowhere in the opinions is he credited or cited by the court, and defendant did not author any of the opinions contained in the volumes; (3) defendant's statements are inherently mis-

leading since a member of the general public could easily be led to believe from defendant's assertions on his firm letterhead and website that he authored the opinion contained in the federal reporter; (4) defendant's statements that he is a member of an elite percentage of attorneys who have been published in the federal reporter are inherently misleading since admission to practice before the United States Court of Appeals does not depend upon a licensed attorney's ability; and (5) defendant's statement on his website that the federal reporters are the large law books that contain the controlling case law of the United States is inherently misleading when the United States Supreme Court routinely reviews and decides cases reaching conflicting interpretations on the law from the United States Court of Appeals.

2. **Attorneys— disciplinary hearing—admonition—inherently misleading communications on letterhead and website**

The Disciplinary Hearing Committee of the North Carolina State Bar (DHC) did not abuse its discretion by ordering the issuance of an admonition as opposed to a less serious sanction for defendant attorney who used false or misleading communications on his letterhead and website, because: (1) contrary to defendant's contention, no showing of actual public harm is required; (2) DHC's disciplinary action and sanction was issued within the statutory limits of N.C.G.S. § 82-28; and (3) the Court of Appeals has stated that so long as the punishment imposed is within the limits allowed by the statute, it does not have authority to modify or change it.

Appeal by defendant from order entered 11 March 2005 and admonition entered 8 April 2005 by Hearing Committee Chair Elisabeth Bunting for the Disciplinary Hearing Commission of the North Carolina State Bar. Heard in the Court of Appeals 9 March 2006.

*David R. Johnson, for plaintiff-appellee.*

*K.E. Krispen Culbertson, defendant-appellant, pro se.*

TYSON, Judge.

K.E. Krispen Culbertson, Attorney ("defendant") appeals from order and admonition of the Disciplinary Hearing Committee of the North Carolina State Bar ("DHC") admonishing him for using false or misleading communications in violation of the North Carolina Revised Rules of Professional Conduct. We affirm.

**N.C. STATE BAR v. CULBERTSON**

[177 N.C. App. 89 (2006)]

## I. Background

Defendant is a duly licensed and practicing attorney in Greensboro and was admitted to practice as a member of the North Carolina State Bar ("State Bar") in 1991. In November 2004, the State Bar filed a complaint against defendant alleging he violated the North Carolina Revised Rules of Professional Conduct. The complaint alleged defendant's law office letterhead contained an asterisk beside his name. Below defendant's name is printed another asterisk and the phrase, "Published in Federal Reports, 3d Series" surrounded by parentheses. The complaint also alleged defendant is described on the firm's website as "also one of the elite percentage of attorneys to be published in Federal Law Reports—the large law books that contain the controlling caselaw [sic] of the United States."

This matter was heard before the DHC on 27 January 2005. The DHC concluded as follows:

2. Culbertson's conduct, as set out above, constitutes grounds for discipline pursuant to N.C. Gen. Stat. § 84-28(a) & (b)(2) as follows:

(a) By using letterhead stationery that indicates that he is published in Federal Reports, 3d Series when only opinions issued by the Court are published in the Federal Reports, Culbertson used letterhead that made a false or misleading communication about the lawyer in violation of Revised Rules 7.1 and 7.5.

(b) By maintaining a website that states that "[he] is also **one of the elite percentage of attorneys to be published in Federal Law Reports**—the large law books that contain the controlling caselaw [sic] of the United States" when only opinions of the Court are published in the Federal Reports, Culbertson maintained a website that made a false or misleading communication about the lawyer in violation of Revised Rules 7.1.

The DHC concluded and ordered, "Culbertson's conduct warrants discipline because Culbertson's choice of the misleading language on his letterhead and website was intentional. However, because Culbertson's violation of the rules was a minor violation, it warrants only an admonition." Defendant appeals.

## II.  Issues

Defendant argues the DHC erred by: (1) concluding his statements that he was "published in Federal Law Reports, 3d Series" were false or misleading; and (2) issuing an admonition rather than a less serious sanction.

## III.  Standard of Review

N.C. Gen. Stat. § 84-28(h) (2005) provides, "There shall be an appeal of right by either party from any final order of the Disciplinary Hearing Commission to the North Carolina Court of Appeals." The standard for judicial review of attorney discipline cases is the "whole record" test. *N.C. State Bar v. DuMont*, 304 N.C. 627, 643, 286 S.E.2d 89, 98 (1982). This test requires the reviewing court to:

> consider the evidence which in and of itself justifies or supports the administrative findings and . . . also [to] take into account the contradictory evidence or evidence from which conflicting inferences can be drawn. . . . Under the whole record test there must be substantial evidence to support the findings, conclusions and result. . . . The evidence is substantial if, when considered as a whole, it is such that a reasonable person might accept as adequate to support a conclusion.

*Id.* at 643, 286 S.E.2d at 98-99 (citations omitted). "Under the 'whole record' test, [this Court] cannot substitute our judgment for the Committee's in choosing between two reasonably conflicting views of the evidence." *N.C. State Bar v. Frazier*, 62 N.C. App. 172, 178, 302 S.E.2d 648, 652 (1983) (citing *Boehm v. Board of Podiatry Examiners*, 41 N.C. App. 567, 255 S.E.2d 328, *cert. denied*, 298 N.C. 294, 259 S.E.2d 298 (1979)). We review questions of law *de novo*. *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 829, 534 S.E.2d 653, 654 (2000).

## IV.  Revised Rules of Professional Conduct

An attorney's violation of the Rules of Professional Conduct constitutes misconduct and is grounds for discipline. N.C. Gen. Stat. § 84-28(b)(2) (2005). Rule 7.1 of the North Carolina State Bar Revised Rules of Professional Conduct (2005) provides, "A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services." Under this rule, a communication is false or misleading if it "contains a material misrepresentation of fact or law." Rule 7.5(a) the North Carolina State Bar Revised Rules of

Professional Conduct (2005) states, "A lawyer shall not use a firm name, letterhead, or other professional designation that violates Rule 7.1."

## V. "False or Misleading" Communication

**[1]** Defendant argues the DHC erred by concluding his statements on his firm letterhead and website that he was "Published in Federal Law Reports, 3d Series" were false or misleading. He asserts the evidence shows the statements were not false or misleading and are constitutionally protected speech. We disagree.

### A. First Amendment

In *Bates v. State Bar of Arizona*, 433 U.S. 350, 365, 53 L. Ed. 2d 810, 824-25 (1977), the United States Supreme Court held advertising by lawyers is a form of commercial speech entitled to protection by the First Amendment. Five years later, the Supreme Court stated:

> Truthful advertising related to lawful activities is entitled to the protections of the First Amendment. But when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse, the States may impose appropriate restrictions. Misleading advertising may be prohibited entirely.

*In re R.M.J.*, 455 U.S. 191, 203, 71 L. Ed. 2d 64, 74 (1982).

### B. Extrinsic Evidence

At the DHC hearing, defendant introduced evidence of a detailed survey conducted by a Wake Forest University political science professor that asked members of the general public whether the phrase, "Published in Federal Reports, 3d" on an attorney's letterhead was misleading. Defendant also introduced a study performed by a Duke University English and anthropology professor which analyzed how the general public would interpret the word, "publish." Defendant argues the DHC failed to consider this evidence of whether the public would actually be misled by the language and erred in relying on its judgment to determine whether this language was false or misleading.

Where the possibility of public deception is self-evident, the DHC is not required to survey the public to determine whether the communication has a tendency to mislead. *Zauderer v. Office of Dis-*

*ciplinary Counsel of The Supreme Court of Ohio*, 471 U.S. 626, 652-53, 85 L. Ed. 2d 652, 673 (1985); *Accountant's Soc. of Virginia v. Bowman*, 860 F.2d 602, 606 (4th Cir. 1988); *see also Farrin v. Thigpen*, 173 F. Supp. 2d 427, 437 (M.D.N.C. 2001) (Evidence that actual consumers were harmed by the communication "is only required where the ad at issue contains a truthful statement that is nonetheless misleading and is not required where the ad is inherently misleading."). We must determine whether the DHC correctly concluded defendant's statements are "inherently misleading." *Farrin*, 173 F. Supp. 2d at 437.

### C.  Inherently Misleading

In *Joe Conte Toyota, Inc. v. Louisiana Motor Vehicle Comm'n*, 24 F.3d 754, 756 (5th Cir. 1994), the United States Court of Appeals for the Fifth Circuit discussed the meaning of "inherently misleading."

> The Court in *In re R.M.J.* suggested that "inherently" misleading advertising may be banned outright, but "potentially" misleading advertising may not. In attempting to understand the distinction, we derive additional guidance from a later commercial speech case, *Peel v. Attorney Disciplinary Commission*, 496 U.S. 91, 110 S. Ct. 2281, 110 L. Ed. 2d 83 (1990).
>
> . . . .
>
> A statement is "inherently" misleading when, notwithstanding a lack of evidence of actual deception in the record, "the particular method by which the information is imparted to consumers is inherently conducive to deception and coercion." *Id.* (Marshall, J. and Brennan, J., concurring). Included is "commercial speech that is devoid of intrinsic meaning." *Id.* (Marshall, J. and Brennan, J., concurring). In her dissent, Justice O'Connor added that "inherently misleading" means "inherently likely to deceive the public." *Id.* at 121, 110 S. Ct. at 1702 (O'Connor, J., Rehnquist, C.J. and Scalia, J., dissenting). Citing *In re R.M.J.*, Justice Marshall noted that states may prohibit actually or inherently misleading commercial speech entirely. *Id.* at 111, 110 S. Ct. at 1697 (Marshall, J. and Brennan, J., concurring).

*Id.* The court held, "From all of this we conclude that a statement is actually or inherently misleading when it deceives *or is inherently likely to deceive*." *Id.* (emphasis supplied).

### D. "Published"

The Federal Reports are the official publications of the United States Courts of Appeal. The published opinions and other official documents of the Courts of Appeal are printed in hardcover book form. The set of books consists of serial volumes. As additional decisions and other written documents are selected for publication, volumes are bound. The parties and names of the attorneys representing before the Court are identified as such. Opinions contained within the Federal Reporters are also published by legal search engines on the internet. *See* **www.lexis.com; www.westlaw.com.**

With the exception of *per curiam* opinions, one of the judges of the Court is identified as the author of the opinion. Other judges on the panel who heard and ruled upon the case are also noted. These judges may author concurring or dissenting opinions which follow the majority's opinion. Those judges who write separate opinions are also identified as authors.

Defendant argues he was "published" in the Federal Reporter because he submitted two briefs to the United States Court of Appeals for the Fourth Circuit and language and arguments from his briefs were paraphrased and summarized in the Court's opinions. *See Ficker v. Curran*, 119 F.3d 1150 (4th Cir. 1997); *S.E.C. v. Dunlap*, 253 F.3d 768 (4th Cir. 2001).

Webster's Dictionary defines "publish" as "to make generally known," "to make public announcement of," "to place before the public," "to produce or release for publication," "to issue the work (of an author)," "to put out an edition," or "to have one's work accepted for publication." Webster's New Collegiate Dictionary 952 (9th ed. 1991). Defendant's name and his appearance as counsel for a party is "published" in the court's official reporter. While defendant may believe this fact allows him to assert he is "published" in the official court's reports, nowhere in either opinion is he credited or cited by the court. Defendant is not a judge on any of the United States Courts of Appeal and did not author any of the opinions contained in those volumes.

Defendant's statements are also inherently misleading because they are likely to deceive the general public. *Joe Conte Toyota*, 24 F.3d at 756. A member of the general public could easily be led to believe from defendant's assertions on his firm letterhead and website that he authored the opinion contained in the Federal Reporter.

Defendant's statements on his website are inherently misleading in other respects. First, defendant's statement professes he is a member of an "elite percentage" of attorneys who have been "published" in the Federal Reporter. Admission to practice before the United States Courts of Appeal does not depend upon a licensed attorney's ability. Any licensed attorney who is in good standing may move to be admitted upon application to appear before these courts. Fed. R. App. P. 46(a) (2005) ("An attorney is eligible for admission to the bar of a court of appeals if that attorney is of good moral and professional character and is admitted to practice before the Supreme Court of the United States, the highest court of a state, another United States court of appeals, or a United States district court[.]").

Second, defendant's statement on his website states that the Federal Reporters are "the large law books that contain the controlling caselaw [sic] of the United States." The opinions of a federal Court of Appeals are controlling precedent on the cases before it and on the cases heard within the Circuit in which the Court sits, but are not the "controlling caselaw [sic] of the United States." The Supreme Court of the United States routinely reviews and decides cases reaching conflicting interpretations of the law from the United States Courts of Appeal. *See, e.g., Dooley v. Korean Air Lines Co.*, 524 U.S. 116, 121, 141 L. Ed. 2d 102, 108 (1998) ("We granted certiorari . . . to resolve a Circuit split concerning the availability of a general maritime survival action in cases of death on the high seas.").

In *Bates*, the Supreme Court recognized that advertising by professionals poses special risks of deception "because the public lacks sophistication concerning legal services, misstatements that might be overlooked or deemed unimportant in other advertising may be found quite inappropriate in legal advertising." 433 U.S. at 383, 53 L. Ed. 2d at 835. The Supreme Court in *In re R.M.J.* later stated, "[t]he public's comparative lack of knowledge, the limited ability of the professions to police themselves, and the absence of any standardization in the 'product' renders advertising for professional services especially susceptible to abuses that the States have a legitimate interest in controlling." 455 U.S. at 202, 71 L. Ed. 2d at 73.

Because defendant's statements are inherently misleading, the DHC was not required to consider extrinsic evidence of whether the public was actually misled. *Zauderer*, 471 U.S. at 652-53, 85 L. Ed. 2d at 673. Substantial evidence in the record supports DHC's conclusion that defendant's statements published on his letterhead and website asserting he is "Published in the Federal Law Reports" are false or

misleading. *DuMont*, 304 N.C. at 643, 286 S.E.2d at 98-99. Defendant's statutory and First Amendment rights were not violated by the DHC's disciplining him for using misleading advertising. *In re R.M.J.*, 455 U.S. at 203, 71 L. Ed. 2d at 74. This assignment of error is overruled.

### VI.  Discipline

[2] Defendant argues the DHC erred by ordering the issuance of an admonition as opposed to a less serious sanction. We disagree.

The DHC's choice of discipline is reviewed under an abuse of discretion standard. *North Carolina State Bar v. Nelson*, 107 N.C. App. 543, 552, 421 S.E.2d 163, 167 (1992), *aff'd*, 333 N.C. 756, 429 S.E.2d 716 (1993). As noted in the DHC's order, "An admonition is a written form of discipline imposed in cases in which an attorney has committed a minor violation of the Rules of Professional Conduct." N.C. Gen. Stat. § 84-28(c)(5) (2005). An admonition is a lesser form of discipline the DHC may impose for a violation of the Rules of Professional Conduct. N.C. Gen. Stat. § 84-28(c) (Misconduct by an attorney shall be grounds for disbarment; suspension up to five years, censure, reprimand or admonition.).

Defendant contends an admonition was improper because there was no showing of actual public harm. Such a showing is not required. The DHC's disciplinary action and sanction issued were within the statutory limits of N.C. Gen. Stat. § 82-28. "This Court [has] stated that 'so long as the punishment imposed is within the limits allowed by the statute this Court does not have the authority to modify or change it.' " *Nelson*, 107 N.C. App. at 552, 421 S.E.2d at 167 (quoting *N.C. State Bar v. Whitted*, 82 N.C. App. 531, 539-40, 347 S.E.2d 60, 65 (1986), *aff'd*, 319 N.C. 398, 354 S.E.2d 501 (1987)). Defendant failed to show the DHC abused its discretion in admonishing him for his conduct. This assignment of error is overruled.

### VII.  Conclusion

The DHC did not err in concluding defendant's statements on his letterhead and website were false and misleading communications under the North Carolina Revised Rules of Professional Conduct, Rules 7.1 and 7.5. No showing is made that the DHC abused its discretion in admonishing defendant for his violations of these Rules. The DHC's order is affirmed.

Affirmed.

Judges McCULLOUGH and ELMORE concur.