[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-11052
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 1, 2011
JOHN LEY
CLERK

D. C. Docket No. 4:09-cv-00193-RH-WCS

EVA LOCKE,
PATRICIA ANNE LEVENSON,
BARBARA VANDERKOLK GARDNER,
NATIONAL FEDERATION OF INDEPENDENT BUSINESS,

Plaintiffs-Appellants,

versus

JOYCE SHORE,
JOHN P. EHRIG,
AIDA BAO-GARCIGA,
ROASSANA DOLAN,
WANDA GOZDZ, et al.,

Defendants-Appellees,

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(March 1, 2011)

Before MARTIN, COX, and BLACK, Circuit Judges.

MARTIN, Circuit Judge:

The question this appeal presents is whether Florida's license requirement for interior designers practicing in commercial settings within the state violates the United States Constitution. The district court held that the license requirement is constitutional under each of the provisions Appellants' relied on to challenge it: the First Amendment, the Dormant Commerce Clause, and the Equal Protection and Due Process Clauses.[1] We agree and affirm.

## I. BACKGROUND

Florida law requires interior designers practicing in nonresidential, commercial settings within the state to obtain a state license. Fla. Stat. §§ 481.209(2), 481.213. Florida statute § 481.223(1)(b) provides that "[a] person may not knowingly . . . [p]ractice interior design unless the person is a registered interior designer unless otherwise exempted herein." A designer must complete a combined total of six years of interior design education and internship experience with a licensed interior designer to qualify for a Florida license. See Fla. Stat.

---

[1] Before the district court, Appellants also unsuccessfully challenged the licensing requirement under the Fourteenth Amendment's Privileges or Immunities Clause. On appeal, Appellants have abandoned this claim. See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (holding that issues not argued on appeal are deemed abandoned); Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 n.4 (11th Cir. 2008).

2

§ 481.209(2); Fla. Admin. Code r. 61-G1-22.001(1). The designer must also pass an examination administered by the National Council of Interior Design Qualifications ("NCIDQ"). Fla. Stat. §§ 481.209 and 481.207.

Florida's statute on its face requires only interior designers, a subset of architects, but not interior decorators, to obtain a state license before practicing in a commercial setting. See Fla. Stat. §§ 481.223(1)(b) and 481.203(8), (15). A separate Florida statute defines "interior design" as "designs, consultations, studies, drawings, specifications, and administration of design construction contracts relating to nonstructural interior elements of a building or structure." Fla. Stat. § 481.203(8). The statute further provides that "'[i]nterior design' includes, but is not limited to, reflected ceiling plans, space planning, furnishings, and the fabrication of nonstructural elements within and surrounding interior spaces of buildings."[2] Id. By contrast, "'[i]nterior decorator services' includes the selection or assistance in selection of surface materials, window treatments, wallcoverings, paint, floor coverings, surface-mounted lighting, surface-mounted fixtures, and loose furnishings not subject to regulation under applicable building codes." Fla. Stat. § 481.203(15).

---

[2] A "nonstructural element" is "an element which does not require structural bracing and which is something other than a load-bearing wall, load-bearing column, or other load-bearing element of a building or structure which is essential to the structural integrity of the building." Fla. Stat. § 481.203(10).

3

Practicing interior design in commercial settings in Florida without a license constitutes a misdemeanor, punishable by up to one year in jail. See Fla. Stat. §§ 481.223(2) and 775.082(4)(a). The Florida Board of Architecture and Interior Design ("the Board"), the entity that enforces the license requirement, may also impose an administrative penalty. See Fla. Stat. § 455.228. In recent cases, the Board has sought to charge violators a $5,000.00 fine per violation. The Board has pursued, on average, several hundred cases per year, in recent years.

Florida's interior design license requirement includes several exceptions. For instance, interior designers practicing in residential settings in Florida may do so without a license. See Fla. Stat. §§ 481.223(1)(b) and 481.229(6)(a). Under certain conditions, Florida also exempts from the license requirement manufacturers of "commercial food service equipment" and employees of retail establishments performing interior decorator services in connection with a retail sale. See Fla. Stat. §§ 481.229(6)(b), (8). Florida also allows unlicensed employees of an architect to practice "under the instruction, control, or supervision" of a licensed architect. Fla. Stat. § 481.229(2). Similarly, "any person" can "act[] as a contractor in the execution of work designed by an architect." Id.

4

Florida law also requires corporations, limited liability companies, and partnerships offering interior design services in commercial settings in Florida to have a Florida-licensed interior designer serve as a partner or one of the principal officers of the firm. See Fla. Stat. § 481.219. For such entities to comply with Florida law, they must obtain a certificate of authorization from the Board. Fla. Stat. § 481.219(3). Certificate applicants must establish that "[o]ne or more of the principal officers of the corporation or one or more partners of the partnership, and all personnel of the [entity] who act in its behalf in [Florida] as interior designers, are registered." Fla. Stat. § 481.219(7)(b). A "registered" interior designer is one who "is licensed" under Florida law. See Fla. Stat. § 481.203(9).

Appellants, Eva Locke, Patricia Anne Levenson, and Barbara Vanderkolk Gardner, currently practice interior design in residential settings in Florida and wish to expand their practice to commercial settings. They are educated and trained in interior design but not licensed as "interior designers" by the state of Florida. The Board has notified Gardner, on two separate occasions, that it has found probable cause to prosecute her for violating Florida's interior design license law. The National Federation of Independent Business is a national trade association with members who, like these designers, provide "interior design" and decorator services in Florida. Some of the association's members have been

5

subject to enforcement actions by the Board for alleged violations of the interior design license law.

Collectively Appellants sued members of the Board ("Appellees") in their official capacity under 42 U.S.C. § 1983 to challenge the constitutionality of Florida's license requirement. The parties filed cross-motions for summary judgment and, after oral argument on the motions, agreed to try the case as a bench trial based solely on the written record. The district court found that Florida's license requirement is constitutional under the First Amendment, Dormant Commerce Clause, and Fourteenth Amendment's Privileges or Immunities, Equal Protection and Due Process Clauses.[3] We likewise conclude that the license requirement is constitutional under the provisions at issue in this appeal. We address each provision in turn, deciding questions of law de novo and reviewing the district court's factual findings for clear error. See Proudfoot Consulting Co. v. Gordon, 576 F.3d 1223, 1230 (11th Cir. 2009).

---

[3] The district court invalidated Florida's titling law, Fla. Stat. § 481.223(1)(c), which prohibited unlicensed designers from "[u]s[ing] the name or title . . . 'interior designer' or 'registered interior designer,' or words to that effect," as unconstitutional under the First Amendment. Because Appellees did not appeal this finding, the issue of the constitutionality of the titling statute is not before this Court.

## II. DISCUSSION

### A. First Amendment

Appellants argue that the license requirement unconstitutionally burdens protected speech under the First Amendment. "A statute that governs the practice of an occupation is not unconstitutional as an abridgement of the right to free speech, so long as any inhibition of that right is merely the incidental effect of observing an otherwise legitimate regulation." Accountant's Soc. of Va. v. Bowman, 860 F.2d 602, 604 (4th Cir. 1988) (quotation marks omitted); see also Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 456–57, 98 S. Ct. 1912, 1918–19 (1978); Wilson v. State Bar of Ga., 132 F.3d 1422, 1430 (11th Cir. 1989) (recognizing, in dicta, that regulations that "govern occupational conduct" with only an "incidental effect" on speech withstand First Amendment scrutiny); Lawline v. Am. Bar Ass'n, 956 F.2d 1378, 1386 (7th Cir. 1992). "If the government enacts generally applicable licensing provisions limiting the class of persons who may practice the profession, it cannot be said to have enacted a limitation on freedom of speech . . . subject to First Amendment scrutiny." Lowe v. SEC, 472 U.S. 181, 232, 105 S. Ct. 2557, 2584 (1985) (White, J., concurring).

There is a difference, for First Amendment purposes, between regulating professionals' speech to the public at large versus their direct, personalized speech

with clients.  See id.; Bowman, 860 F.2d at 604–05.  Florida's license requirement

regulates solely the latter.  Because the license requirement governs "occupational

conduct, and not a substantial amount of protected speech," it does not implicate

constitutionally protected activity under the First Amendment.  See Wilson, 132

F.3d at 1429.

        We likewise reject Appellants' argument that Florida's license requirement

is unconstitutionally overbroad under the First Amendment.[4]  Appellants have

failed to prove that the license requirement meets the exacting standard for

invalidating laws under the overbreadth doctrine.  That doctrine "permits the facial

invalidation of laws that inhibit the exercise of First Amendment rights if the

impermissible applications of the law are substantial when judged in relation to

the statute's plainly legitimate sweep."  City of Chicago v. Morales, 527 U.S. 41,

52, 119 S. Ct. 1849, 1857 (1999) (quotation marks omitted).  Moreover, we must

construe the license requirement to avoid constitutional overbreadth problems.

See New York v. Ferber, 458 U.S. 747, 769 n.24, 102 S. Ct. 3348, 3361 (1982)

("When a federal court is dealing with a federal statute challenged as overbroad, it

should, of course, construe the statute to avoid constitutional problems, if the

---

[4] Appellants also argued before the district court that Florida's license requirement was void for vagueness under the First Amendment.  They have failed to renew that argument on appeal.

8

statute is subject to such a limiting construction."); Crowell v. Benson, 285 U.S. 22, 62, 52 S. Ct. 285, 296 (1932). The overbreadth doctrine is "strong medicine" that generally should be administered "only as a last resort." United States v. Williams, 553 U.S. 285, 293, 128 S. Ct. 1830, 1838 (2008) (quotation marks omitted); Ferber, 458 U.S. at 769, 102 S. Ct. at 3361. Because the license requirement is a professional regulation with a merely incidental effect on protected speech, we cannot say that its impermissible applications are substantial relative to its plainly legitimate sweep. We conclude that Florida's license requirement is constitutional under the First Amendment.

## B. Dormant Commerce Clause

Appellants next argue that Florida's license requirement violates the Dormant Commerce Clause. The Dormant Commerce Clause prohibits states from enacting statutes that impose "substantial burdens" on interstate commerce. See Dennis v. Higgins, 498 U.S. 439, 447, 111 S. Ct. 865, 870 (1991). It prevents a state from "overtly block[ing] the flow of interstate commerce at [its] borders." Diamond Waste, Inc. v. Monroe Cnty., 939 F.2d 941, 944 (11th Cir. 1991).

We first observe that the Dormant Commerce Clause applies to professional licensing statutes like the one at issue in this case. See, e.g., Kirkpatrick v. Shaw, 70 F.3d 100, 103 (11th Cir. 1995) (per curiam) (analyzing whether Florida's state

9

bar character and fitness requirement violated the Dormant Commerce Clause);

Serv. Mach. & Shipbldg. Corp. v. Edwards, 617 F.2d 70, 73–76 (5th Cir. 1980)[5]

(striking city ordinance which required only nonresident itinerant laborers to

register their employment as unconstitutional under the Dormant Commerce

Clause because "[t]he movement of persons falls within the protection of the

commerce clause").

Our review of state statutes under the Dormant Commerce Clause involves

two levels of analysis. Bainbridge v. Turner, 311 F.3d 1104, 1108–09 (11th Cir.

2002). We must first determine whether the state law discriminates against out-of-

state residents on its face. Id. Laws that facially discriminate against out-of-state

residents are analyzed under heightened scrutiny and are rarely upheld. Id. (citing

Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth., 476 U.S. 573, 578–79,

106 S. Ct. 2080, 2084 (1986)). Second, state laws that do not facially discriminate

against out-of-state residents are struck down only if "the burden imposed on

[interstate] commerce is clearly excessive in relation to the putative local

benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S. Ct. 844, 847

(1970); Bainbridge, 311 F.3d at 1109.

_____

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we
adopted as binding precedent all Fifth Circuit decisions issued prior to October 1, 1981.

We begin our inquiry by determining whether Florida's license requirement discriminates against out-of-state interior designers on its face or in effect. The interior design license requirement does not facially discriminate against out-of-state designers. The statutory text provides that both Florida and out-of-state interior designers need a Florida license to practice in commercial settings within the state. See Fla. Stat. § 481.223(1)(b) ("A person may not knowingly . . . [p]ractice interior design unless the person is a registered interior designer . . . ."). The Supreme Court and this Court have found, however, that neutrally-worded statutes are unconstitutional under the Dormant Commerce Clause if they have a discriminatory effect on out-of-state residents unless the state can "justify it both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 352–53, 97 S. Ct. 2434, 2446–47 (1977); C&A Carbone, Inc. v. Town of Clarkstown, 511 U.S. 383, 394–95, 114 S. Ct. 1677, 1684 (1994) (striking neutrally-worded ordinance, which required all of the town's solid waste to be processed in the town, as unconstitutional under the Dormant Commerce Clause because of discriminatory impact on out-of-state waste processing); see also Island Silver & Spice, Inc. v. Islamorada, 542 F.3d 844, 846–47 (11th Cir. 2008) (striking neutrally-worded ordinance, which imposed size restrictions on retail

11

establishments, as unconstitutional under the Dormant Commerce Clause because of discriminatory impact on interstate chain retailers).

The Supreme Court has emphasized several factors which guide us in determining whether a neutrally-worded state law has a discriminatory impact. The Supreme Court has focused on whether the state law "exclude[s] a class of predominantly out-of-state [residents]" from a particular market. See Exxon Corp. v. Governor of Md., 437 U.S. 117, 137, 98 S. Ct. 2207, 2220 (1978). The Court also has looked to whether the state statute imposes costs on out-of-state residents that in-state residents do not have to bear. See, e.g., Hunt, 432 U.S. at 348–49, 351–52, 92 S. Ct. at 2444–46. Moreover, the Court has considered whether the state legislature was motivated by protectionist purposes in passing the law at issue. See, e.g., Granholm v. Heald, 544 U.S. 460, 472, 125 S. Ct. 1885, 1895 (2005) ("States may not enact laws that burden out-of-state [residents] simply to give a competitive advantage to in-state businesses."); H.P. Hood & Sons v. DuMond, 336 U.S. 525, 538, 69 S. Ct. 657, 665 (1949).

(i) License Requirement for Individual Interior Designers

In light of these factors, we conclude that Florida's license requirement does not have a discriminatory effect on out-of-state interior designers. Florida's license requirement does not exclude a class of predominately out-of-state interior

12

designers. The license requirement does not apply to out-of-state interior designers practicing in residential settings in Florida. Further, out-of-state unlicensed interior designers may practice in commercial settings in Florida "under the instruction, control, or supervision" of a licensed architect or while "acting as a contractor in the execution of work designed by an architect." See Fla. Stat. § 481.229(2). While the requirement somewhat restricts entry into Florida's commercial interior design market, it does not block entry altogether. Rather, it merely requires interior designers, both in and out-of-state, to achieve proficiency in the field before practicing. Any cost imposed on out-of-state residents is one that Florida residents must also bear, because they too must obtain a license to practice interior design in commercial settings.

Appellants next ask us to find the license requirement unconstitutional because of the alleged discriminatory effect of the former grandfather clause. In the past, a grandfather clause insulated Florida-based interior designers from the more onerous requirements that apply to out-of-state designers. See Fla. Stat. 1988, ch. 88-383, § 21 (repealed 2000). Designers with a Florida "municipal or county license"[6] who held themselves out as interior designers for one year prior

[6] Such licenses are the equivalent of a business license that is required for any business operating within a municipality's jurisdiction and is issued upon payment of a fee. See Occupational Licenses, http://www.ci.boca-raton.fl.us/city/servicesA-Z.shtm (explaining that occupational licenses are synonymous with "business tax receipts" and required for the privilege of engaging in a particular

to the passage of the licensing requirement in 1988 could obtain a Florida license by passing the NCIDQ exam but without undergoing any formal education. Id. Other interior designers needed at least six years of experience to obtain a Florida license. Id.

We conclude that the license requirement's former grandfather clause does not change the result. The grandfather clause was not limited to Florida residents, but merely to designers, both in- and out-of-state, who held occupational licenses in Florida counties prior to the passage of the licensing requirement. Thus, in- and out-of-state interior designers alike benefitted from the clause. We cannot say that any added burden the clause imposed on interstate commerce disproportionately impacted out-of-state designers.

We likewise reject Appellants' argument that Florida acted with a protectionist purpose in passing the interior design license requirement. Florida's license requirement is a "safety regulation" and thus carries a "strong presumption of validity." See Kassel v. Consol. Freightways Corp. of Del., 450 U.S. 662, 670, 101 S. Ct. 1309, 1316 (1981) (quotation marks omitted). The statutory text reveals that the Florida legislature was primarily concerned with protecting Florida consumers from safety risks in passing the licensing statute:

business or profession within a jurisdiction) (last visited Dec. 16, 2010).

14

> The primary legislative purpose for enacting this part is to ensure that every architect practicing in this state meets minimum requirements for safe practice . . . . The Legislature further finds that it is in the interest of the public to limit the practice of interior design to interior designers or architects who have a design education and training . . . .

Fla. Stat. § 481.201. Moreover, the legislative history confirms that the legislature highlighted safety concerns, such as failure to comply with fire and building codes and higher levels of indoor pollution, when considering whether to implement the licensing requirement. See Fla. S. Comm. on Approp., Senate Staff Analysis and Economic Impact Statement, S. CS/CS/SB 127, 20th Sess., at 1–2 (May 1988) [hereinafter Senate Report].

Because Florida's license requirement does not discriminate against out-of-state residents, it is constitutional under the Dormant Commerce Clause unless the burden it imposes on interstate commerce clearly exceeds its putative local benefits. Pike, 387 U.S. at 142, 90 S. Ct. at 847. The Florida legislature justified the license requirement by citing safety benefits. "If safety justifications are not illusory, the Court will not second-guess legislative judgment about their importance in comparison with related burdens on interstate commerce." Kassel, 450 U.S. at 670, 101 S. Ct. at 1316. When the legislature passed the license requirement, it relied on a report that suggested that the unlicensed practice of

15

interior design could lead to decreased compliance with building and fire codes as well as increased pollution. See Senate Report, at 1–2.

We cannot say that the Florida legislature's safety justification was merely illusory. We therefore decline the invitation to second guess the legislature's judgment as to the relative importance of the safety justifications versus any burdens imposed on interstate commerce. In light of the strong presumption of validity we must accord safety regulations, we conclude that Florida's interior designer license requirement, as applied to individual designers, passes muster under the Dormant Commerce Clause.

(ii) License Requirement for Firms

Appellants next argue that Florida's license requirement is unconstitutional under the Dormant Commerce Clause because it has a discriminatory effect on out-of-state interior design firms. Florida's statute requires that, for firms practicing interior design in commercial settings in Florida, "[o]ne or more of the principal officers of the corporation or one or more partners of the partnership, and all personnel of [the entity] who act in its behalf in [Florida] as interior designers are registered" under the Florida licensing regime. Fla. Stat. § 481.219(7)(b). "Registered" interior designers are those who are licensed. See Fla. Stat. § 481.203(9).

The factors we apply to determine whether a neutrally-worded state statute has a discriminatory impact on out-of-state residents lead us to conclude that the license requirement, as applied to design firms, is constitutional under the Dormant Commerce Clause. Our analysis of the license requirement for firms parallels our analysis of the requirement for individual designers but differs in one respect. We acknowledge that requiring firms to appoint principal officers who are licensed in Florida may impose a greater burden on interstate commerce than merely requiring individuals practicing in Florida to obtain a license.

We conclude, however, that because this burden is one shared by Florida and out-of-state firms alike, the burden is not clearly excessive in relation to the requirement's local benefit. The license requirement for firms does not exclude a class of predominately out-of-state firms from practicing interior design in Florida. Any cost imposed on out-of-state firms as a result of the license requirement is also imposed on in-state firms doing business in Florida's commercial design market. Moreover, the license requirement does not apply to out-of-state firms doing business in Florida's residential settings. See Fla. Stat. § 481.229(6)(a). Thus, similar to the license requirement for individuals, the requirement merely restricts but does not bar entry into Florida's commercial interior design market. We also do not agree with Appellants' argument that the legislature was motivated

17

by protectionist purposes in passing the license requirement for firms, because the safety justification underlying the requirement is no less compelling when applied to firms. We therefore conclude that the license requirement for firms is also constitutional under the Dormant Commerce Clause.

### C. Due Process and Equal Protection Clauses

Appellants next argue that Florida's license requirement violates their substantive due process right to earn a living in the profession of their choice. They also argue that the license requirement violates their rights under the Equal Protection Clause of the Fourteenth Amendment because it discriminates against out-of-state interior designers. Rational basis review applies to Due Process and Equal Protection Clause challenges to state professional regulations, because the right to practice a particular profession is not a fundamental one. See Williamson v. Lee Optical of Okla., 348 U.S. 483, 488, 75 S. Ct. 461, 464 (1955); see also Kirkpatrick, 70 F.3d at 103. "On rational-basis review, a classification in a statute . . . bear[s] a strong presumption of validity." FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 314–15, 113 S. Ct. 2096, 2101–02 (1993). A statute is constitutional if "there is any reasonably conceivable state of facts that could provide a rational basis for [it]." Id. at 313, 113 S. Ct. at 2101. The party challenging the statute bears the burden of proving that the statute lacks a rational basis. See Bah v. City

18

of Atlanta, 103 F.3d 964, 967 (11th Cir. 1997) (citing Beach Commc'ns, Inc., 508 U.S. at 314–15, 113 S. Ct. at 2101–02).

Appellees have failed to prove that Florida's license requirement lacks a rational basis. "States have a compelling interest in the practice of professions within their boundaries, and . . . they have broad power to establish standards for licensing practitioners and regulating the practice of professions." Goldfarb v. Va. State Bar, 421 U.S. 773, 792, 95 S. Ct. 2004, 2016 (1975). The Florida legislature enacted the license requirement to protect public safety by ensuring that interior designers are trained to comply with fire and building codes. See Fla. Stat. § 481.201 (describing purpose of interior design license requirement as promoting "the interest of the public"); see also Senate Report, at 1–2.

We reject Appellants' argument that the legislature's safety concern does not provide a rational basis for the license requirement because it was unfounded. A law "may be based on rational speculation unsupported by evidence or empirical data." Beach Commc'ns, 508 U.S. at 315, 113 S. Ct. at 2102. A statute survives rational basis review even if it "seems unwise . . . or if the rationale for it seems tenuous." Romer v. Evans, 517 U.S. 620, 632, 116 S. Ct. 1620, 1627 (1996). Thus, the fact that, after Florida passed its license requirement, other states have considered and rejected the notion that the unlicensed practice of interior design

19

poses safety concerns, is of no consequence. Further, this Court has recognized that:

> under rational basis review, a state has no obligation to produce evidence to sustain the rationality of a statutory classification. Rather, a statute is presumed constitutional, and the burden is on the one attacking the law to negate every conceivable basis that might support it, even if that basis has no foundation in the record.

Deen v. Egleston, 597 F.3d 1223, 1230 (11th Cir. 2010) (quotation marks omitted). Therefore, contrary to Appellants' argument, Florida and Appellees had no burden to produce evidence of the safety benefits that follow from allowing only licensed interior designers to design in commercial settings.

Moreover, Appellants did not negate every conceivable basis that might support Florida's license requirement. They have failed to carry their burden and prove that the license requirement does not lead to any improvement in the safety of interior design or compliance with building and fire codes.

Nor do the exceptions to Florida's license requirement pose constitutional problems under rational basis review. "The legislature may select one phase of one field and apply a remedy there, neglecting the others." Lee Optical, 348 U.S. at 489, 75 S. Ct. at 465. Thus, the fact that Florida's legislature exempts, under certain circumstances, retail establishments and manufacturers of commercial food service equipment from the licensing requirement does not invalidate the statute,

even if it seems unwise or illogical in light of the safety concerns behind the statute. "Under rational basis review, a court must accept a legislature's generalizations even when there is an imperfect fit between means and ends." Deen, 597 F.3d at 1230–31 (quotation marks omitted).

## III.  CONCLUSION

We conclude that as to all of Appellants' claims, they have failed to overcome the strong presumption of validity we must accord to professional and safety regulations.  Therefore, we affirm the district court's finding that Florida's interior design license requirement is constitutional.

**AFFIRMED.**

BLACK, Circuit Judge, concurring in the result:

While I concur in the result in this case, I write separately to underscore my view that the majority's analysis of the Appellants' First Amendment and Dormant Commerce Clause claims is tied narrowly to this particular professional licensing regulation and the evidence in the record before us.

As I understand the majority opinion, it holds that Florida's licensing scheme does not violate the First Amendment because it is a regulation of occupational conduct with only an incidental impact on protected speech. The practice of interior design, as defined by the statute, involves direct, personalized communications with clients in which designers use their technical expertise to exercise judgment on behalf of clients on matters affecting health and safety. Because of this "personal nexus" between the designer and the client and because the designer is exercising judgment on behalf of the client in light of the client's specific circumstances, Florida's law is properly viewed as a legitimate regulation of professional practice. *See Lowe v. SEC*, 472 U.S. 181, 232, 105 S. Ct. 2557, 2584 (1985) (White, J., concurring).

In applying the first tier of our Dormant Commerce Clause analysis, *Island Silver & Spice, Inc. v. Islamorada*, 542 F.3d 844, 846 (11th Cir. 2008), I agree that

the law does not discriminate against interstate commerce on its face, nor does the record establish that the law is discriminatory in effect.

As to the second tier, I agree with the majority that the law advances a legitimate state interest and its burdens on interstate commerce are not "clearly excessive in relation to the putative local benefits." *See Pike v. Bruce Church,* 397 U.S. 137, 142; 90 S. Ct. 844, 847 (1970).

The individual licensing requirement advances the state's legitimate interest in promoting the health and safety of occupants of buildings. The firm licensing requirement further promotes safety by ensuring that a firm's licensed interior designers are supervised by someone who is similarly qualified and in a position to actually exercise control over interior design work produced by the firm. *See* Fla Stat. § 481.219(7)(b); § 481.219(10) (explaining that the principal officer who qualifies the firm for its certificate of authorization "shall be responsible for ensuring responsible supervising control of projects of the entity").

Furthermore, while the licensing scheme does limit unlicensed designers' ability to practice in Florida, it also preserves several outlets for these designers to provide their services. Because the extent of the burden imposed by the licensing requirement is significantly lessened by the statutory exemptions, I cannot

conclude on this record that the law's burdens on interstate commerce are clearly excessive in relation its benefits.