253 F.3d 768 (4th Cir. 2001)
 SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,
v.
TRACY CALVIN DUNLAP, JR., Defendant-Appellant,
and
ELFINDEPAN, S.A.; SOUTHERN FINANCIAL GROUP; BARRY LOWE; JAMES L. MCCALL; STRATEGIC ASSET FUNDS, S.A.; EDMUND MENDEN; MICHAEL MENDEN; MICHAEL ZIEGLMEIER; C.R.C.C., LLC; PATRICK WILSON, Defendants.
 No. 01-1382 No. 01-1391
 UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
 Argued: April 2, 2001
Decided: April 23, 2001
 
 Appeals from the United States District Court for the Middle District of North Carolina, at Durham. William L. Osteen, District Judge. (CA-00-742)[Copyrighted Material Omitted]
 COUNSEL ARGUED: K.E. Krispen Culbertson, CULBERTSON & ASSO- CIATES, Greensboro, North Carolina; John Joseph Korzen, ANDER- SON, KORZEN & ASSOCIATES, P.C., Kernersville, North Carolina, for Appellant. John Wallace Avery, Special Counsel, Eric N. Miller, Kurt G. Gresenz, SECURITIES AND EXCHANGE COM- MISSION, Washington, D.C., for Appellee. E. Clarke Dummit, Winston-Salem, North Carolina, for prospective Intervenor. ON BRIEF: Jacob H. Stillman, Solicitor, Katharine B. Gresham, Assis- tant General Counsel, SECURITIES AND EXCHANGE COMMIS- SION, Washington, D.C., for Appellee.
 Before WIDENER, WILLIAMS, and KING, Circuit Judges.
 Affirmed in part, modified and vacated in part, and remanded by published opinion. Judge King wrote the opinion, in which Judge Widener and Judge Williams joined.
 OPINION
 KING, Circuit Judge:
 
 
 1
 Tracy Calvin Dunlap, Jr. ("Dunlap") appeals his civil contempt citation and incarceration in the Middle District of North Carolina. The contempt proceedings against Dunlap resulted from his failure and refusal to comply, on Fifth Amendment grounds, with a prelimi- nary injunction order (the "Injunction Order") entered by the district court on August 17, 2000. We possess jurisdiction pursuant to the provisions of 28 U.S.C. S 1292(a)(1). For the reasons explained below, we sustain the assertion of Dunlap's privilege on a limited por- tion of the Injunction Order, but find it to be otherwise unavailing.[1] We accordingly affirm in part, modify and vacate in part, and remand for further proceedings.
 
 I.
 A.
 
 2
 According to the Securities and Exchange Commission ("SEC"), Dunlap is the agent and control person of defendants Elfindepan, S.A. ("Elfindepan") and Southern Financial Group ("Southern Financial"). On August 10, 2000, the SEC filed its complaint in the district court and obtained a temporary restraining order against Dunlap, Elfinde- pan, Southern Financial (collectively, "Defendants"), and others, to halt, and secure information concerning, an allegedly fraudulent investment scheme.[2]
 
 
 3
 On August 17, 2000, the district court entered the Injunction Order requiring the defendants to, inter alia, produce records and account- ings and to repatriate investor funds deposited overseas. Any funds not returned within five days -- by August 22, 2000 -- were to be specifically accounted for.
 
 
 4
 After receiving an extension until August 28, 2000, Dunlap and Elfindepan nevertheless failed to comply with the Injunction Order; instead, they filed motions for relief therefrom,[3] and then sought a protective order.[4] As a result of the failure of Dunlap and Elfindepan to comply with the Injunction Order, the SEC, on September 14, 2000, served discovery requests on them, seeking essentially the same information called for in the accounting. Dunlap and Elfindepan filed responses to the discovery requests on or about December 29, 2000, six weeks after they were due. In their responses, Dunlap and Elfinde- pan stonewalled discovery and asserted that, in light of the pending motions they had filed, it would be "premature" to answer the inter- rogatories or produce the documents requested.
 
 
 5
 The district court, at a hearing conducted on January 24, 2001, denied the Defendants' motions for relief from the Injunction Order and also denied their motions for a protective order. The court ordered the Defendants to complete the accounting and repatriation of inves- tor funds by February 1, 2001. The court also overruled Dunlap's and Elfindepan's objection to answering the SEC's discovery requests, and it ordered them to respond to the outstanding discovery requests by February 6, 2001.
 
 
 6
 On January 25, 2001, Dunlap filed a motion requesting relief from the district court's previous orders and asserting for the first time his Fifth Amendment privilege against self-incrimination. The SEC opposed Dunlap's motion and, on March 2, 2001, filed a motion for a contempt citation against the Defendants. On March 13, 2001, the district court conducted a hearing on the contempt request, and orally granted the SEC's motion. By corresponding order dated March 15, 2001 (the "Contempt Order"), the court held the Defendants in civil contempt. The district court then gave the Defendants until noon on March 20, 2001, to purge themselves of contempt.
 
 
 7
 In denying his Fifth Amendment claim, the district court concluded that Dunlap could not validly assert the privilege in an effort to pre- vent Elfindepan's and Southern Financial's compliance with the vari- ous court orders. The court, however, did not directly address Dunlap's personal Fifth Amendment claim of privilege.[5] The Defen- dants failed to comply with the Contempt Order by March 20, 2001, and, in an order entered on March 23, 2001 (the "Incarceration Order"), the district court ordered Dunlap incarcerated for civil con- tempt "until such time as he shall purge himself of the civil contempt or until further orders of th[e] court." Incarceration Order, at 2.
 
 
 8
 Contemporaneous to these developments, defendant Lowe pre- vailed upon the district court to establish receiverships for both Elfindepan and Southern Financial. By order dated March 23, 2001 (the "Receivership Order"), the district court, exercising its inherent equitable authority, found that "[e]xceptional circumstances exist that warrant the appointment of a receiver[.]" Receivership Order, at 1. Accordingly, it appointed Christy Myatt as receiver,[6] in order to, inter alia, "establish a receivership trust account" and to "take and maintain custody, control and possession of all assets and properties" belong- ing to or in the possession of Elfindepan or Southern Financial. Id. at 2. The Receivership Order also requires Myatt to file an accounting "containing an itemized and detailed list of all property" owned by Elfindepan and Southern Financial, along with any other reports or accountings ordered by the court. Id. at 4. In addition to delineating the authority and duties associated with the receiverships, the Receiv- ership Order enjoins Dunlap from entry onto the premises of Elfinde- pan and Southern Financial. It further directs the Defendants to immediately turn over and make available to the receiver all of the assets, books, and records of Elfindepan and Southern Financial, and to provide an accounting to the receiver of any assets of those entities "which have been transferred, conveyed, or disposed of since April 1, 2000." Id. at 5.
 
 B.
 
 9
 From an appellate standpoint, Dunlap initially invoked our jurisdic- tion on March 14, 2001. He joined with Elfindepan and Southern Financial in a petition for permission to appeal the district court's March 13, 2001 decision denying his motion to assert his Fifth Amendment privilege and denying his request for relief from the Injunction Order.[7] In an Order entered on March 16, 2001, in No. 01- 674, we denied without prejudice the petition for permission to appeal, observing, however, that an appeal of right might have been pursued under 28 U.S.C. S 1292(a)(1), inasmuch as a continuing injunctive order was being challenged.[8] Recognizing that Dunlap and his co-appellants had not filed a notice of appeal, we admonished them to comply with jurisdictional requirements and also to specify which order or orders of the district court they sought to have reviewed.
 
 
 10
 On March 22, 2001, Dunlap filed a notice of appeal from the Con- tempt Order. It was followed on March 23, 2001, by another notice of appeal challenging not only the Contempt Order, but also the Incar- ceration Order. Pursuant to these appeals,[9] Dunlap sought a stay of his incarceration and release pending appeal, both of which the SEC opposed. By our Memorandum Order of March 27, 2001 (the "Mem- orandum Order"), we denied the SEC's effort to dismiss these appeals, and we granted Dunlap's motions insofar as the appeals related to certain potentially valid Fifth Amendment claims. More particularly, we concluded, "[T]o the extent that these appeals impli- cate Dunlap's Fifth Amendment privilege against producing his own personal records, or being compelled to create and produce new and potentially incriminating documents, he possesses a potentially meri- torious claim of Fifth Amendment privilege." Memorandum Order, at 4-5. We noted, however, that Dunlap enjoys no Fifth Amendment privilege that would excuse his obligation to produce the existing business records of Elfindepan and Southern Financial; we therefore denied his motions to the extent they related to such claims. Having granted Dunlap some relief, we also ordered that his appeals be expe- dited, and we directed that supplemental briefs as well as appendices be promptly filed and that oral argument be heard on April 2, 2001.
 
 
 11
 Elfindepan, whose interests had been represented in the district court proceedings by Dunlap's attorney, filed motions in these appeals on March 29, 2001. Although it had not noticed an appeal of the Injunction Order or the Contempt Order, Elfindepan sought to intervene in these appeals through new counsel. It also requested that we grant it a stay of any further proceedings in the district court pend- ing a Costa Rican court's ruling on certain disclosure issues.[10]
 
 
 12
 On April 2, 2001, we heard oral argument from the parties, and also from the prospective Intervenor. Based in part on information first presented at oral argument concerning the receiverships, we requested and were provided with the Receivership Order, along with materials submitted to the district court in connection therewith. Accordingly, by order of April 4, 2001, we asked that the receiver, its counsel, the parties, and the prospective Intervenor make supple- mental submissions regarding the impact of the receiverships upon these appeals. These submissions were received on April 10, 2001, and have been considered by the court.
 
 II.
 
 13
 In these interlocutory appeals, Dunlap seeks to challenge the dis- trict court's Contempt Order and also its Incarceration Order, both of which constitute orders "continuing" and "refusing to dissolve or modify" an injunction, i.e., the Injunction Order. See 28 U.S.C. S 1292(a)(1). As such, we possess jurisdiction over Dunlap's appeals.
 
 III.
 ELFINDEPAN'S MOTIONS
 
 14
 We first address the motions of Elfindepan to intervene and to be awarded a stay. Although Elfindepan was a named defendant in the proceedings below -- and is indeed subject to the contempt citation entered by the district court -- it has failed to notice an appeal chal- lenging either the Injunction Order or the Contempt Order. Of impor- tance, in the Contempt Order the district court made an explicit finding that Dunlap is "an agent and control person of Elfindepan[.]" Contempt Order, at 2. This is a finding of fact that Dunlap and Elfindepan now contest.
 
 
 15
 Rather than appeal the district court's Injunction Order or its Con- tempt Order, as it was entitled to do under S 1292(a)(1), Elfindepan has instead elected to wait and attempt to "intervene" on appeal. Alternatively, Elfindepan has requested that we grant it a stay of any further proceedings in the district court. However, Elfindepan has not pursued relief in the district court by means of a stay pending appeal. This constitutes an omission we cannot properly ignore. Under Rule 8 of the Federal Rules of Appellate Procedure, Elfindepan must either "move first in the district court" for stay relief or "show that moving first in the district court would be impracticable[.]" Fed. R. App. P. 8(a). See, e.g., Hirschfeld v. Bd. of Elections, 984 F.2d 35, 38 (2nd Cir. 1993) (denying motion to stay judgment because there was "no explanation why the instant motion for a stay pending appeal was made in the first instance to [the appellate court.]"). Elfindepan has plainly failed to satisfy the requirements of Rule 8, and we therefore deny its motions without prejudice.[11]
 
 IV.
 THE CHALLENGED ORDERS
 A. Dunlap Personally
 
 16
 To the extent that the Injunction Order and the Contempt Order require Dunlap to produce his personal records, or to create and pro- duce a sworn accounting regarding his personal financial transactions and assets, those orders implicate his Fifth Amendment protections. They should be modified as necessary to ensure that they do not con- flict with Dunlap's Fifth Amendment privilege against self- incrimination. See Bellis v. United States, 417 U.S. 85, 87 (1974) ("It has been long established, of course, that the Fifth Amendment privi- lege against compulsory self-incrimination protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony.").
 
 
 17
 The SEC asserts that the Contempt Order does not reach Dunlap personally, and that it was never so intended. Instead, according to the SEC, it is confined to his representative capacity as an agent and con- trol person of Elfindepan and Southern Financial. Upon examination of the orders, however, we conclude that the limitation asserted by the SEC is arguably ambiguous. The Contempt Order specifies that Dun- lap, in such representative capacity, shall purge his contempt by "fully comply[ing] with all existing Court orders, including the preliminary injunction[.]" Contempt Order, at 5. The Injunction Order, however, clearly contemplates that Dunlap testify and produce documents in his personal capacity -- as well as on behalf of Elfindepan and Southern Financial. Because, as even the SEC recognizes, Dunlap possesses a valid Fifth Amendment privilege against production and testimony in his personal capacity, the Contempt Order must be modified and vacated to the extent, if any, it encompasses such obligations.
 
 B. Southern Financial
 1. Business Records
 
 18
 As we have noted, the district court found Dunlap to be the "con- trol person" of Southern Financial. Significantly, Dunlap does not dis- pute this finding on appeal. Under the Injunction Order, Southern Financial must provide the SEC with a sworn accounting of the fol- lowing: (a) "all securities, funds, real estate, and other assets" held in its name or in which it has any direct or indirect beneficial interest; (b) "each account with any financial institution or brokerage firm" in which it has or had any direct or indirect beneficial interest; and (c) "every transaction in which any funds or other assets of any kind were transferred" from Southern Financial to any other defendant in this action, or to any other person or entity in which Southern Financial had an ownership interest. Injunction Order, at 9. The Injunction Order further requires Southern Financial to take such steps as are necessary to repatriate certain funds and assets described in the SEC's complaint, and also requires it to provide the SEC and the district court with a written description of the funds repatriated. Id. at 10.
 
 
 19
 Although the Injunction Order does not recognize a distinction between the production of existing business records and the creation of new documents, that distinction is a factor in our Fifth Amendment analysis. See, e.g., United States v. Doe, 465 U.S. 605, 610-12 (1984) (observing that the contents of voluntarily prepared business records are not privileged). Insofar as the Injunction Order's accounting requirement can be satisfied by the production of business records created by Southern Financial in the ordinary course of its business, Dunlap cannot avail himself of the Fifth Amendment privilege to evade compliance. See Braswell v. United States, 487 U.S. 99, 100 (1988). As the control person of Southern Financial, Dunlap bears responsibility for ensuring that the existing business records are pro- duced. The SEC acknowledges that Dunlap's obligation in this regard has been partially fulfilled.
 
 
 20
 On appeal, Dunlap concedes that not all of Southern Financial's records have been produced. Significantly, he also acknowledges that he has not complied with the mandate to repatriate investor funds. He requests that we direct his release from custody under proper condi- tions, so that he may see Southern Financial's production through to completion. We decline to so direct, however, because Dunlap admit- tedly remains in defiance of both the Injunction Order and the Con- tempt Order, at least vis-a-vis Southern Financial's business records. We are unable to view the sanctions imposed upon Dunlap -- incar- ceration pending his compliance with valid court orders -- as an abuse of discretion by the district court.
 
 
 21
 Moreover, contrary to Dunlap's contention on appeal, we are not convinced that appointment of the receiver for Southern Financial so undermines Dunlap's obligations under the Injunction Order as to mandate his immediate release from custody. The Receivership Order contemplates that the receiver shall "take and maintain custody, con- trol and possession of all assets and properties . . . belonging to . . . Southern Financial[.]" Receivership Order, at 2. However, it further directs the defendants, including Dunlap, to immediately turn over to the receiver all books and records of Southern Financial. Id. at 5. While creation of the receivership imposes an additional duty upon Dunlap, i.e., to produce Southern Financial's business records to the receiver, it does not explicitly excuse his pre-existing obligations under the Injunction Order. Dunlap plainly remains in contempt of the district court's orders, notwithstanding the appointment of the receiver for Southern Financial. We therefore deny his request that this Court order his release from custody.[12]
 
 2. Accounting and Repatriation
 
 22
 To the extent the Injunction Order requires Southern Financial to prepare a new accounting -- not contained in its existing business records -- Dunlap's Fifth Amendment claim fails to provide protec- tion to him. While it is true that the Court's decision in Braswell secures Dunlap's immunity from prosecution for acts done in comply- ing with his obligations to produce records as Southern Financial's control person, Dunlap's privilege against self-incrimination does not excuse him from causing such an accounting to be created. Given his established status as control person, it is incumbent upon Dunlap to take the appropriate actions within his authority to ensure Southern Financial's compliance with the Injunction Order and the Contempt Order. See Wilson v. United States, 221 U.S. 361, 376 (1911) ("A command to the corporation is in effect a command to those who are official responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the cor- porate duty, they, no less than the corporation itself, are guilty of dis- obedience, and may be punished for contempt.") (quoted in Colonial Williamsburg Found. v. Kittenger Co., 38 F.3d 133, 137 (4th Cir. 1994)). We must therefore reject Dunlap's assertion that he may not properly be adjudged in contempt for his failure and refusal to cause Southern Financial to produce the required accounting.[13]
 
 C. Elfindepan
 
 23
 Although the parties have quarreled in district court and on appeal as to Elfindepan's precise status under Costa Rican law, the district court found it to be "an artificial entity within the meaning of [Bras- well], doing business in the form of a corporation." Contempt Order, at 1 (citations omitted). The court also made an explicit finding that Dunlap is "an agent of and control person of Elfindepan[.]" Contempt Order, at 2. Elfindepan, in its motion to intervene, and Dunlap, in the district court, have asserted that Costa Rican law precludes Dunlap from complying with the Injunction Order insofar as it requires Dun- lap to produce records of Elfindepan's shareholders and business transactions. The SEC has consistently rejected these arguments, insisting that Costa Rican law poses no such barrier to compliance. Dunlap, in turn, now asserts that he was fired this past January from his position as President of Elfindepan and no longer serves as the entity's control person. Given his purported lack of authority, Dunlap argues that it is impossible for him to comply with the Injunction Order and the Contempt Order, particularly insofar as those orders require him to produce records and implement funds repatriation efforts on behalf of Elfindepan.
 
 1. Business Records
 
 24
 With respect to the Injunction Order's requirement that Dunlap produce Elfindepan's existing business records -- records implicating neither Dunlap's Fifth Amendment privilege nor his right to use immunity under Braswell, see supra Part IV.B.1 -- Dunlap asserts that such disclosures would violate Costa Rican law and subject him personally to criminal sanctions. This issue was raised to a limited extent before the district court. To establish his position, Dunlap pres- ented the Affidavit of Marco Antonio Mata-Coto, a Costa Rican attor- ney. See Appellee's App., at 306-09. The SEC countered this point with experts of its own, contending that Costa Rican law imposes no such barriers to Dunlap making the disclosures required of Elfinde- pan. See id. at 16-19.
 
 
 25
 Although the district court ordered Dunlap to produce the Elfinde- pan records to the SEC, it is unclear what significance, if any, it gave to Dunlap's assertion that Costa Rican law prevented his disclosure of these records in an American courtroom. The district court should fully evaluate and make findings in this respect, specifically determin- ing the nature and significance, if any, of Costa Rican law to this mat- ter. The determinations of a district court on foreign law are treated as rulings on questions of law, see Fed. R. Civ. P. Rule 44.1, and, as such, are subject to de novo review on appeal.[14] At this juncture, how- ever, we cannot review the district court's determination of Costa Rican law, because the district court did not explicitly decide the issue. Thus, on remand the district court should determine, under the guidelines of Rule 44.1, what Costa Rican law actually provides, and its significance, if any, in this matter.
 
 2. Accounting and Repatriation
 
 26
 The SEC contends, in this court as well as the district court, that Dunlap's assertions regarding Costa Rican law do not reach the Injunction Order's directions to provide an accounting to the SEC and to repatriate investor funds. We are constrained to agree with the SEC on this point. Dunlap, however, also claims that he is no longer in a position to provide an accounting or repatriate Elfindepan's investor funds, given that he allegedly has been relieved of his duties as Presi- dent. The problem with Dunlap's claim in this regard, however, is that the district court made an explicit factual finding to the contrary. Despite Dunlap's efforts to persuade the district court -- and now this court -- that he is no longer the control person of Elfindepan, and thus incapable of securing compliance with the Injunction Order, there is insufficient evidence for us to conclude that the district court's finding was clearly erroneous. Thus, to the extent the district court found Dunlap in contempt for Elfindepan's failure to provide the SEC with an accounting and its failure to repatriate investor funds, we must affirm.[15]
 
 V.
 
 27
 For the reasons set forth above, we deny Elfindepan's motions to intervene and for issuance of a stay of the district court proceedings; we affirm the Contempt Order and the Incarceration Order in large part; we modify and vacate the Contempt Order to a limited extent; and we remand to the district court for such further proceedings as may be appropriate.
 
 
 28
 AFFIRMED IN PART, MODIFIED AND VACATED IN PART, AND REMANDED
 
 
 
 Notes:
 
 
 [1]
 For reasons explained supra , in Part III, we also deny the motions of Elfindepan, S.A. to intervene in these appeals and to be awarded a stay.
 
 
 [2]
 In its complaint, the SEC alleges that Elfindepan, Southern Financial, Dunlap, and Barry Lowe ("Lowe") defrauded investors nationwide in connection with the unregistered offer and sale of securities of Elfinde- pan, "a supposed Costa Rican financial company." Appellant's App., at 19-20. Dunlap testified before the SEC on August 3, 2000, that he is the President, Chief Operating Officer, Chief Financial Officer, Controller, and Accountant of Elfindepan. Appellee's App., at 196-97. He is also listed as the Chairman of the Board in Elfindepan's corporate charter. Id. at 224. According to his August 3 testimony, Dunlap exercised full con- trol of Elfindepan's funds. Id. at 202-03. Dunlap occupies a similar posi- tion with respect to Southern Financial, which is organized as a business trust. Dunlap is a trustee of Southern Financial, the custodian of its trust documents, and a signatory to its bank account. Id. at 200, 201, 204, 291.
 The SEC alleges that the Defendants have raised at least $13.5 million from the public in at least nine states, and that the Defendants violated various securities laws by knowingly and recklessly making, and causing others to make, numerous materially false statements to investors. Among other things, the Defendants promised highly favorable returns on investments (as much as 40-50% per month), without any reasonable basis for such claims, and misrepresented that the investments were secure (as by falsely claiming that Elfindepan was associated with the International Monetary Fund and the World Bank). Additionally, inves- tors were falsely advised that Elfindepan had been in business for twenty-three years, when in fact the company is less than two years old. Of significance, the SEC alleges that funds from later investors were used to pay earlier investors, in the classic operation of a "Ponzi" scheme. Furthermore, the SEC alleges that Dunlap did not inform inves- tors that a substantial amount of investor money was paid to his own family members and to support his own living expenses.
 
 
 [3]
 Dunlap and Elfindepan filed their motion for relief from the Injunc- tion Order on September 7, 2000, and Southern Financial filed its motion on October 10, 2000.
 
 
 [4]
 The motion for a protective order, which did not stay ongoing discov- ery proceedings, was filed on October 10, 2000.
 
 
 [5]
 Although the SEC insists that Dunlap has waived his Fifth Amend- ment privilege, the district court declined to make findings on that issue. In its Contempt Order, the court stated, "To the extent Dunlap has not waived his personal Fifth Amendment privilege . . ., defendant Dunlap may not assert his personal Fifth Amendment privilege to prevent full compliance with existing court Orders by defendants Elfindepan and Southern Financial." Contempt Order, at 4.
 
 
 [6]
 Christine L. Myatt is a partner in the Greensboro, North Carolina law firm of Adams, Kleemeier, Hagan, Hannah & Fouts PLLC.
 
 
 [7]
 The substance of the district court's oral ruling of March 13, 2001, finding that Dunlap had not yet satisfied the terms of the Injunction Order and setting forth a schedule for future compliance, was memorial- ized in the March 15 Contempt Order.
 
 
 [8]
 Attendant to the petition for permission to appeal, Elfindepan and Southern Financial sought to be excused from making corporate disclo- sures required by Rule 26.1 of the Federal Rules of Appellate Procedure, and also sought stay pending appeal. We denied both of these requests without prejudice.
 
 
 [9]
 Dunlap's appeals of March 22 and March 23, 2001 have now been consolidated in this Court. Neither Elfindepan nor Southern Financial joined in either of these notices of appeal.
 
 
 [10]
 In its motion to intervene, Elfindepan asserts that its attorney, Man- ual Carrillo Pacheco, has "properly filed a petition with Fifth Civil Court of San Jose requesting permission to allow Elfindepan, S.A. to release the information requested by the SEC." Motion to Intervene, at 2. Elfindepan further represents that Dunlap and Pacheco would be subject to criminal prosecution if they were to disclose information demanded by the SEC without prior clearance by the Costa Rican court.
 
 
 [11]
 We note additionally that Elfindepan appears to be ineligible to inter- vene on appeal, since it is an original party to the suit in the district court. See Black's Law Dictionary 820 (6th ed. 1990) (defining "Intervention" as "[t]he procedure by which a third party not originally a party to the suit, but claiming an interest in the subject matter, comes into the case[.]") (emphasis added). See also Dues v. Allstate Ins. Co., 15 F.3d 506, 525 (5th Cir. 1994) ("The purpose of intervention is to admit, by leave of court, a person who is not an original party into a proceeding.") (emphasis added).
 
 
 [12]
 Our denial of Dunlap's request is without prejudice, in that it does not preclude him from renewing the request before the district court on remand. To the extent that Dunlap regards the Receivership Order as conflicting with the district court's prior orders, or rendering compliance impossible -- by, for example, barring Dunlap's entry onto the premises of Southern Financial, see Receivership Order, at 5 -- those concerns should be presented first to the district court.
 
 
 [13]
 As to Dunlap's persisting obligation to see to the repatriation of funds and assets on behalf of Southern Financial, the district court may well decide to facilitate such compliance by releasing Dunlap on an appropriate bond. Any such bond would undoubtedly be substantial -- in an amount adequate to protect the allegedly injured investors -- and would of course have to be adequately secured.
 
 
 [14]
 Rule 44.1 provides, in pertinent part, that "[t]he court, in determining foreign law, may consider any relevant material or source, including tes- timony, whether or not submitted by a party or admissible under the Fed- eral Rules of Evidence."
 
 
 [15]
 As we concluded supra, in Part IV.B.2, Dunlap's securing of an accounting by and on behalf of a business entity that he controls does not implicate his Fifth Amendment rights. Furthermore, whether the Receiv- ership Order affects the district court's previous determination that Dun- lap is the control person of Elfindepan is an issue to be first determined by the district court. See supra Part IV.B.1 & note 12.