GREGORY, Circuit Judge,
dissenting:
At age sixty-seven, Thorson was the only co-conspirator against whom the government chose to press all charges and was able to obtain a conviction. The sentencing enhancements that the government requested, and the district court applied, increased Thorson’s sentence ten levels, from a sentencing range of thirty-seven to forty-six months to a range of 108 months to 135 months. The district court clearly erred in imposing the two enhancements at issue here, adjustments for role in the offense and for obstruction of justice.
I.
At the outset, because of the short shrift the majority gives to the issues, I feel compelled to address the disparate sentences resulting from the government’s conduct in this case, as well as some statements by the district court that seem to be the basis for Thorson’s enhanced sentence. On September 29, 2005, defendants Ross, Johnston, Franks, and Thorson were indicted with one count of conspiracy to defraud the U.S. Treasury Department, in violation of 18 U.S.C. § 371, and three counts of aiding and assisting in the filing of false individual income tax returns, in violation of 26 U.S.C. § 7206(2). Prior to trial, the government dismissed three counts against co-conspirators and leaders Ross and Johnston after they entered into plea agreements, whereby each pled guilty to one count of conspiracy. Ross was subsequently sentenced to only five years pro *324 bation, and Johnston was sentenced to thirty-seven months imprisonment followed by three years of supervised release, a sentence at the bottom of Thorson’s range without the numerous enhancements. The government then gave Decker, who played a role in the conspiracy arguably much greater than that played by Thorson, total immunity in return for his testimony at the trial of Thorson and Franks. At the conclusion of the trial, the jury found Thorson guilty on all counts and Franks not guilty on all counts. It was then that the government sought the four enhancements against Thorson.
After imposing the enhancements sought by the government, the district court made the following statement when discussing Thorson’s sentence:
I consider this to be a tragedy for Mr. Thorson and his family, but it is also a tragedy for the legal profession. Mr. Thorson is a disgrace to the legal profession. There are those who takes [sic] them law degree [sic] and use it in the best traditions of this profession of which I’m a member for promotion of good and the advancement of client’s interest and the legitimate practice of law, and there are those who take that special training and use it not for good but for evil.
In this case, Mr. Thorson is not just a concigliori [sic] in the context of the godfather, but he was a significant leader of this enterprise. Indeed, as described by one of the coconspirators, a closer. His offense is truly offensive to the court____
J.A. 1121. Clearly the court took Thor-son’s conduct as a personal affront, but that justification is insufficient to support the government’s piling on in this case. Beyond that fact, it is evident that Thor-son’s occupation weighed heavily on the court’s mind when arriving at a sentence approximately triple the original, unenhanced guidelines sentencing range. Given the lack of evidence to support the enhancements at issue and the court’s apparent focus on Thorson’s role as an attorney, it seems that if the court was intent on adjusting Thorson’s sentence based on facts in the record, it could have applied a two-level enhancement for use of his special skill as an attorney under U.S.S.G. § 3B1.3, which the government requested. The court took a different course, one which the majority today endorses, and punishes Thorson on no evidentiary basis.
II.
A.
To qualify for a four-level increase under § 3Bl.l(a) of the guidelines, a defendant must have been “an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.” U.S. Sentencing Guidelines Manual (“U.S.S.G.”) § 3B1.1(a) (1998). We have recognized that “[t]he Sentencing Commission has indicated that a court should consider seven factors in determining” whether a defendant acted as an organizer or leader. United States v. Sayles, 296 F.3d 219, 224 (4th Cir.2002). These include: “[1] the exercise of decision making authority, [2] the nature of participation in the commission of the offense, [3] the recruitment of accomplices, [4] the claimed right to a larger share of the fruits of the crime, [5] the degree of participation in planning or organizing the offense, [6] the nature and scope of the illegal activity, and [7] the degree of control and authority exercised over others.” U.S.S.G. § 3B1.1, cmt. n. 4.
There is no indication that the district court considered any of these factors, as it was required to do. To justify the adjustment in this case, the district court stated *325 that “Mr. Thorson was clearly a leader” “based on the testimony that I heard and the other information that’s been brought to my attention.” J.A. 1088. The court continued,
I can recall, for example, the testimony of Mr. Decker, who described himself as a “go-fer.” [1] But when it came to describing Mr. Thorson, he referred to him as a “closer.” Mr. Decker’s role was to go out and find gullible pigeons and bring them in. None of those pigeons would have stayed inside the birds nest of this case but for Mr. Thorson, who was the person that was able to convince even people with the letters “CPA” after their name, and some people with the letters “J.D.” after their names that, yes, this was a legitimate deal.
It is very clear that but for his fundamental role as an architect of a large portion of this scheme that this transaction could — these transactions could never have gone down and that he clearly was an organizer or leader[2] I therefore conclude that the adjustment for role in the offense set forth in Paragraph 59 of the [PSR] is correct and I adopt that.
J.A. 1088-89. The court failed to cite any of the seven factors, making principally conclusory statements.
In United States v. Chambers, we remanded the case for resentencing because the district court failed to apply the factors to determine whether the defendant was a supervisor or manager:
The district court’s factual findings supporting the upward adjustment in Chambers’s sentence were limited to a statement that Chambers “was at least a supervisor at some level.” We find no basis in the record for concluding that the district court considered the factors outlined in application note 3 in making this finding. The evidence may or may not support the conclusion that Chambers was a manager or supervisor. However, without specific factual findings showing that the district court evaluated the defendant’s role in the offense in light of the factors in application note 3, we cannot conduct meaningful appellate review of this issue. Accordingly, we vacate Chambers’s sentence and remand.
985 F.2d 1263, 1269 (4th Cir.1993) (emphasis added). We further held that “[o]n remand, the district court should apply the factors outlined in application note 3 and determine whether Chambers’s role in the conspiracy was sufficiently extensive to warrant an increase in offense level under § 3B1.1(b).” Id. Chambers controls here. Because the district court in this case, like the district court in Chambers, did not cite any of the relevant factors and relied on conclusory statements instead of sufficient evidence in the record, I would remand for resentencing.
B.
The one inaccurate example provided by the court and the court’s citation to the PSR does not save the leadership enhancement. First, scouring the record for some evidence, however slight, to support the *326 enhancement is not only outside of our role, but also does not satisfy the standard to which we adhere. “A finding of fact is clearly erroneous when, ‘although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.’ ” In re Mosko, 515 F.3d 319, 324 (4th Cir.2008) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). On the record as a whole, I am left with the inescapable conclusion that the court mistakenly found Thorson to be a leader or organizer.
The “primary goal of § 3B1.1” is “the determination of a defendant’s culpability relative to other participants in a criminal activity ‘based upon the role the defendant played in committing the offense.’ ” Chambers, 985 F.2d at 1268; U.S.S.G. § 3B1.1, cmt. background (“This adjustment is included primarily because of concerns about relative responsibility.”). The district court in this case in no way compared Thorson’s role to the roles of other members of the conspiracy. Instead of focusing on relative culpability, the- district court based the enhancement on its perception of the importance of Thorson’s role in the conspiracy, describing Thorson as the “closer.” This is erroneous for two reasons. First, the district court’s, description of Thorson as the “closer” is unsupported by the record. The court stated that “none of’ the investors “would have stayed” in the scheme “but for” Thorson. J.A. 1089. This contradicts the testimony of Decker, who specifically stated that Thorson was only involved in marketing “as ... needed” and that some investors turned to Thorson for legal information while others decided to invest solely based on Decker’s presentation. J.A. 216-17, 225-26. Decker was the primary salesperson, and Thorson did not instruct Decker on how to market the program.
Second, as the Tenth Circuit has found, “the gravamen of this enhancement is control, organization, and responsibility for the actions of other individuals because § 3B1.14(a) is an enhancement for organizers or leaders, not for important or essential figures.” United States v. Anderson, 189 F.3d 1201, 1211 (10th Cir.1999) (emphasis added) (internal quotation marks and citation omitted); United States v. Owens, 70 F.3d 1118, 1129 (10th Cir.1995) (remanding for resentencing because the fact that the defendant was “an important figure who was integral to the success of [the] conspiracy” was insufficient to justify an adjustment for leadership) (internal quotations omitted). The district court here plainly found Thorson to be a vital member of the conspiracy, although based on a questionable interpretation of the evidence. But, as the case law shows, even if true, simply describing Thorson as the “closer” is inadequate to justify a leadership enhancement. Finding that Thorson convinced some investors to join the scheme fails to demonstrate that Thorson had any “control, organization, [or] responsibility for the actions of others.” Anderson, 189 F.3d at 1211.
The court does cite to paragraph fifty-nine of the PSR, which provided that Thorson’s
authority and control over numerous aspects of the conspiracy is evidenced by his correspondence to other participants and their actions at his direction. Also, [Thorson] compiled documents and maintained binders containing key paperwork for each partnership including the partnership agreements, original signature pages, assignments, donation paperwork, lists of investors, and tax returns.
J.A. 1193. However, this paragraph describes nothing more than actions an attor *327 ney would typically take and does not demonstrate leadership of others. Moreover, the correspondence referred to in the PSR consists of two letters from Thorson that, while possibly meant to address “the degree of control and authority exercised over others,” U.S.S.G. § 3B1.1, cmt. n. 4, wholly fails to support that factor. The first letter asked the accountant, Galvin, to obtain signatures on partnership agreements, inquired about obtaining employer identification numbers, and requested certain documents for the files. If this letter demonstrates any control, it is over paperwork and not over persons. “[I]n assessing whether a defendant played an aggravating role in the offense of conviction, the key inquiry is whether the defendant’s role was that of ‘an organizer or leader of people,’ as opposed to that of a manager over the property, assets, or activities of a criminal organization.” United States v. Llamas, 599 F.3d 381, 390 (4th Cir.2010) (quoting United States v. Cameron, 573 F.3d 179, 185 (4th Cir.2009)). Therefore, this letter is insufficient to justify the adjustment for leadership. The second letter actually shows that Thorson was acting at the direction of his client, Johnston. The letter, dated March 9, 1998, from Thorson to Johnston, enclosed documents with instructions for Johnston regarding signature and delivery and started by stating, “Here are the documents you requested. ... ” J.A. 968 (emphasis added). This letter suggests that Johnston had control over Thorson. The instructions to obtain signatures contained in the letter, again demonstrate, if anything, control over paperwork.
The PSR also cites Thorson’s compilation and maintenance of paperwork. As stated, preparing the necessary paperwork and maintaining the partnerships’ records is consistent with Thorson’s role as an attorney brought in by Ross. While one can unquestionably be an attorney and a leader or organizer, there is no evidence that Thorson had control or management responsibility over people relative to other co-conspirators. Control over records is not enough to support the enhancement given. See Llamas, 599 F.3d 381, 390.
C.
Conducting the proper analysis, according to Chambers, as the district court and the majority failed to do, it is apparent that Thorson was not a leader or organizer. First, the government failed to present evidence that Thorson was in charge of making major decisions. U.S.S.G. § 3B1.1, cmt. n. 4 (listing as the first factor “the exercise of decision making authority”). Instead, evidence showed that Ross brought Thorson in to “help” with legal issues and marketing. J.A. 215. Additionally, Decker testified that Ross, not Thorson, was the “boss” who possessed decision-making authority. J.A. 299. Decker also testified to the following:
Q: Now, again, consistent with Mr. Ross being the boss of these partnerships, is it fair to say that Mr. Ross was the one who decided how everyone was going to be compensated in the partnerships?
A: That is correct.
Q: That certainly applied to you, correct?
A: Yes.
Q: And your understanding was that applied to Mr. Johnston and Mr. Thorson as well, correct?
A: That is correct.
Q: And it was Mr. Ross who made the decision, did he not, that you would get your compensation in the form of these what you dispute as loans, but he wanted them described as loans, correct?
*328 A: It was his decision to issue the promissory notes, yes that’s correct.
J.A. 302. While true that more than one conspirator may have control or decision-making authority, the evidence points to only Ross as possessing this leadership quality.
Second, “the nature of [Thorson’s] participation,” U.S.S.G. § 3B1.1, cmt. n. 4, was not one of an organizer or leader. As previously described, Ross recruited Thor-son to provide legal advice and assist with marketing. J.A. 215. The trial court’s factual finding that Thorson was a “closer” that was essential to sealing the deal with every investor conflicts with Decker’s testimony that Thorson became involved only when potential investors requested clarification on the program’s operation. Decker described the marketing of the investment and Thorson’s role as follows:
I was well versed enough so that I could handle it. I would go on the appointments. I would make the initial presentation and if there was any follow-up needed, I would have Tom Thorson follow up with a phone call the next day or two just to kind of, you know, see if the investors had any questions, any concerns, and he would help me in — in some cases I didn’t need it but in some cases I did. So, I just used his knowledge and expertise as I needed it.
I just went out and met my clients, presented the investment, and some of them bought just based on what I told them. Some of them needed background help with follow-up calls from Tom Thorson.
J.A. 216-17, 225-26. Providing reassurance and explanation as necessary cannot convert a participant in this conspiracy into a leader. In fact, Decker’s description of Thorson’s role shows Thorson to only be acting as the partnerships’ attorney by discussing the program’s legal requirements with some potential investors when they had questions.
Third, Thorson did not recruit accomplices.[3] U.S.S.G. § 3B1.1, cmt. n. 4 (listing “recruitment of accomplices” as a factor). The core team involved in this conspiracy was in place before Thorson came into the picture, and it was Ross who linked the parties together. In fact, Thorson was recruited by Ross after Ross’s previous attorney Ellinger was no longer involved. J.A. 297. Ross and Johnston knew each other for many years, having worked together before, and they began the program in 1995. Ross employed Decker as the salesperson to expand the program. Additionally, Franks, the accountant, was used because he had prior dealings with Ross.
Fourth, Thorson did not claim a right to a larger share of the profits, U.S.S.G. § 3B1.1, cmt. n. 4 (listing “the claimed right to a larger share of the fruits of the crime” as a factor). Instead, he received significantly less money than both Ross and Johnston. Ross, receiving the largest share, claimed fifty-four percent of the total compensation: over two million dollars. Johnston received approximately $744,000, or nineteen percent of the total compensation. Meanwhile, Thorson and Decker both received approximately $500,000, or *329 thirteen percent of the total compensation. J.A. 977.
Fifth, Thorson’s “degree of participation in planning or organizing the offense,” U.S.S.G. § 3B1.1, cmt. n. 4, counsels against finding Thorson to be a leader or organizer. As discussed previously, Thor-son was recruited by Ross after Ellinger, the previous attorney, was no longer involved. And, at the time of Thorson’s joining, the basic format of the investment scheme was in place.
Sixth, Thorson did not exercise control and authority over others to an extent necessary to characterize him as an organizer or leader. Again, it must be pointed out that the court should have been guided by relative culpability. See Chambers, 985 F.2d at 1268; U.S.S.G. § 3B1.1, cmt. background. It is clear that Ross was the decision-maker of the group. Furthermore, evidence demonstrated that Decker, the salesperson, excised control over Thor-son. Decker testified that Thorson did not instruct him on marketing, and that Decker “just used [Thorson’s] knowledge and expertise as [Decker] needed it.” J.A. 216-17, 225. Thorson may have had control over paperwork, but as discussed above, that is entirely inadequate to justify classifying him as an organizer or leader. See Llamas, 599 F.3d at 390.
The government argues that Thorson’s role during the initiation of civil and criminal investigations illustrates that he was a leader or organizer. The government relies on testimony by Decker that he called Thorson after being contacted by the IRS, and that Thorson told him not to meet with the IRS. However, this action is what one would expect given that Thorson was acting as a legal advisor and hardly shows that Thorson was a leader. The government also neglects to inform the court that Decker was also contacted by Johnston that same day, and Johnston instructed him not to speak to the IRS. J.A. 263. Finally, to establish that he had control, the government relies on Thorson’s title as a “Managing General Partner” of the Partnerships. This is unpersuasive because Johnston, the supposed go-fer, was also listed as a Managing General Partner. J.A. 974. It is therefore unclear whether this term had any actual correspondence to degree of control. While the government’s evidence does show Thor-son’s involvement with co-conspirators, it does not show that he recruited them or controlled them activity.
In conclusion, the district court failed to carry out the “primary goal of § 3B1.1,” which is “the determination of a defendant’s culpability relative to other participants in a criminal activity ‘based upon the role the defendant played in committing the offense.’ ” Chambers, 985 F.2d at 1268. The above application of the relevant guideline factors to the evidence before us makes clear that Ross and Johnston, both of whom organized the conspiracy and obtained much more compensation from it, were more culpable than Thorson. The court failed to apply the guideline factors, and this case should be remanded for re-sentencing. See United States v. Brooks, 957 F.2d 1138, 1150 (4th Cir.1992) (remanding the case because a sentencing adjustment was not supported by evidence relied on by the district court).
III.
The district court also clearly erred in finding that Thorson attempted to obstruct justice. Under § 3C1.1 of the guidelines, a defendant’s base level is increased by two levels if
(A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant *330 offense of conviction, and (B) the obstructive conduct related to (i) the defendant’s offense of conviction and any relevant conduct; or (ii) a closely related offense.
U.S.S.G. § 3C1.1. Included in the list of examples of conduct coming within the guideline is “producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding.” Id., cmt. n. 4(c).
To the district court, Thorson argued that the evidence did not support the conclusion that he engaged in obstruction of justice. J.A. 1000. While Thorson asserted that imposing the obstruction of justice enhancement and the sophisticated concealment enhancement constituted impermissible double-counting, an argument he declined to press before this Court, he also argued that “producing] the alleged false documents to the Government, either during the IRS audit or in response to grand jury subpoenas,” was insufficient for the obstruction enhancement. J.A. 1001. According to his reasoning, “[o]nce the documents were created, there was no choice but to produce them to the Government when the Government asked for them. Indeed, withholding the documents in response to a grand jury subpoena that specifically required that they be produced arguably would have been an act of obstruction of justice.” J.A. 1001.
The court rejected Thorson’s double-counting argument and concluded “for the reasons set forth in the [PSR] at Paragraph 60” that the adjustment for obstruction of justice is appropriate.” J.A. 1096. Paragraph sixty of the PSR provides that, according to the government,
[Thorson] caused fraudulent documents to be provided to the grand jury in April 2001. [Thorson] caused to be produced to the grand jury two agreements between VCDC and HMPA 1995-2 and HMPA 1995-3, respectively, dated December 23, 1995 and December 22, 1996.... [T]he agreements were backdated and submitted to support the false deductions. [Thorson] also caused to be produced pursuant to a subpoena to AGH, a Quickbooks schedule purporting to show that transfers from the Wachovia account to the AGH account were loans from MAMMA, and that [Thor-son]’s use of the funds were loans from AGH. In fact, evidence demonstrated that those payments constituted income to [Thorson] from the sales of the HMPA and related partnership interests. Finally, [Thorson] caused to be provided to the grand jury the correspondence between [Thorson] and AGH to foster the false pretense that his use of the funds in the AGH account were non-taxable loans.
J.A. 1193. Thus, the court ruled that based solely on the handing over of the back-dated and false documents in response to the subpoenas, Thorson attempted to obstruct justice.
“In order to have acted willfully within the meaning of [§ 3C1.1], a defendant must ‘consciously act with the purpose of obstructing justice.’ ” United States v. Romulus, 949 F.2d 713, 717 (4th Cir.1991) (quoting United States v. Stroud, 893 F.2d 504, 507 (2d Cir.1990) (emphasis omitted)). “If the defendant lacks knowledge that his actions are likely to affect a judicial proceeding, he lacks the requisite intent to obstruct.” United States v. Furkin, 119 F.3d 1276, 1282 (7th Cir.1997).
In this case, Thorson did not willfully obstruct or attempt to obstruct justice. The district court did not find that Thor-son created the documents at issue for the purpose of obstructing an investigation, despite the government’s direct statement *331 to this Court that it did so.[4] Instead, the district court relied only on paragraph sixty of the PSR and concluded that Thorson “caused fraudulent documents to be provided to the grand jury.” J.A. 1096. “Caused to be provided” is not the same as “created for the purpose of.” Absent any evidence that Thorson created the documents to obstruct justice, simply complying with the subpoenas is insufficient to support an enhancement in this case.
Both parties agree that when the grand jury issued the subpoenas, the documents at issue had already been created. At the time of the documents’ creation, without knowledge that a grand jury would even be convened, Thorson did not intend to obstruct its investigation. See Furkin, 119 F.3d at 1282. Thus, “the natural result of his plan” was not “to interfere with judicial processes.” United States v. Neiswender, 590 F.2d 1269, 1274 (4th Cir.1979). Indeed, the government argued at sentencing that the creation of the documents served a purpose apart from obstruction of justice: to conceal the offense. The government urged, and the district court agreed, that the exact same documents used to justify the obstruction enhancement were created for the purpose of concealing the true donation dates and foster-mg the false pretence that the payments to Thorson were loans. J.A. 1028, 1192. Thorson thus created the documents to carry out and conceal the conspiracy, not to obstruct a future grand jury investigation.
Indeed, Thorson aided the grand jury investigation by complying with the subpoenas and in no way tried to thwart the grand jury’s efforts. The documents produced by Thorson provided much of the substantive ammunition in the government’s case against him. Also, had Thor-son not complied with the subpoenas, he would have likely been subject to obstruction of justice. Although the subpoenas at issue are not in the record, I assume that one was sent to Thorson in his representative capacity, the other being sent to AGH.[5] As such, Thorson was obligated to produce the existing business records, having no Fifth Amendment right despite the documents’ incriminating nature. See S.E.C. v. Dunlap, 253 F.3d 768, 775 (4th Cir.2001) (finding that the Fifth Amendment does not apply to a custodian’s production of voluntarily prepared business records); United States v. Stone, 976 F.2d 909, 912 (4th Cir.1992) (“The privilege against compulsory self-incrimination is, of course, personal, and does not apply to *332 collective entities, such as corporations.”). One cannot simultaneously comply with and obstruct the same investigation. In other words, it cannot be that a defendant is subject to obstruction for refusing to provide subpoenaed documents and for, without more, producing the same existing documents.
The government’s advancement of such position, adopted by the district court and now the majority, suggests that the only way Thorson could have avoided an obstruction enhancement was to alert the government about the nature of the documents, in other words to incriminate himself. This punishes Thorson for exercising his Fifth Amendment right — yet, a defendant cannot be compelled to provide incriminating testimony. Application Note Two to § 3C1.1 provides that
[t]his provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant’s denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision.
U.S.S.G. § 3C1.1, cmt. n. 2; United States v. Taylor, 31 F.3d 459, 468 (7th Cir.1994) (“§ 3C1.1 cannot be read to abrogate a defendant’s Fifth Amendment rights.”). Thorson did not volunteer the documents or designate them for any purpose; instead, he produced the documents solely because the subpoenas required it. He did so without testimony or commentary, as was his right.
We addressed the catch-22 Thorson faced in United States v. Coleman, 1989 WL 50286 (4th Cir.1989) (unpublished). In Coleman, the defendant back-dated certain documents and placed them in a personnel file to give the impression that the defendant’s actions were lawful. Id. at *2. When the government subsequently subpoenaed the file, the defendant produced the file without making any alteration to it. Id. at *3. As the Court found, the file tampering for which the defendant was convicted had already been completed. Id. Yet, the government argued that the defendant should also be convicted for obstruction of a grand jury investigation. We rejected this argument on the grounds that the simple act of producing documents requested by a subpoena could not, without more, support a conviction for obstruction of justice:
Were we today to sanction such an approach, the result would be to discourage litigants from tendering subpoenaed documents and would naturally cause a chilling effect on the swift and complete compliance with grand jury subpoenas. We do not believe that in pursuing this conviction the government intended such a result. Nor would such a result be properl[6]1
... Here, appellant did little more than comply with the subpoena. Any act of illegality on the part of the appellant had long been completed. We are reluctant now to affirm a conviction absent a showing of a distinct culpable act on the part of the defendant.
Id. Although Coleman involved the statutory crime of obstruction of justice, its holding is unambiguous — a defendant may not be punished for compliance with a subpoena by producing the requested documents that may have been previously altered. Thorson, like Coleman, did not alter the documents requested, but only produced the documents, as required. To sustain the obstruction adjustment here, *333 we need a distinct culpable act by Thorson apart from his compliance with the subpoena — the government has failed to point to it.
Based on the above reasoning, I find that although commentary to the guideline does list producing a false record to the grand jury as an example of obstruction, “production” cannot mean simply providing pre-existing documents pursuant to a subpoena. A review of case law shows no case in which a defendant’s offense level was raised based exclusively on the defendant providing previously-altered documents pursuant to a subpoena. For example, in Furkin, the only case cited by the district court and the case relied on by the government in its sentencing memorandum, the conduct upon which the Seventh Circuit affirmed the obstruction of justice enhancement was affirmative, deliberate, and undertaken with the plain purpose to obstruct the administration of justice. In that case,
Furkin committed eight of the nine types of listed conduct that qualify for the obstruction of justice enhancement. For example, after Furkin learned of the grand jury investigation, he lied to the IRS and caused others to do so, he caused others to lie to the grand jury, he failed to produce records which had been subpoenaed, and he created false documents to be turned over to the IRS and to the grand jury.
Furkin, 119 F.3d at 1285; see also United States v. Hughes, 401 F.3d 540, 558 (4th Cir.2005) (affirming the obstruction of justice adjustment based on perjury before a bankruptcy court); United States v. Martin, 369 F.3d 1046, 1061 (8th Cir.2004) (finding that concealing and destroying documents, as well as backdating checks, after an investigation had begun, qualified as obstruction of justice).
Before this Court, the government for the first time argues that the court’s application of the obstruction of justice enhancement is justified because the documents were produced during the IRS audit. The government did not present this argument to the district court, and the court never considered it. Thus, I believe that the majority should have adhered to “[t]he general rule ... that except in exceptional circumstances, ‘a federal court does not consider an issue not passed upon below.’ ” United States v. Moss, 963 F.2d 673, 676 (4th Cir.1992) (quoting Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)). Nevertheless, I find the government’s argument unpersuasive on this point.
The government relies on United States v. Fiore, 381 F.3d 89 (2d Cir.2004), for the proposition that “the obstruction enhancement applies to efforts to obstruct not just criminal investigations, but also civil and administrative inquiries into the same, conduct.” Resp. Br. at 35. In Fiore, the defendant was convicted of securities fraud, as well as perjury for lying to SEC officials during their civil investigation. 381 F.3d at 91. Thus, the Second Circuit found that “[wjhere federal administrative and prosecutorial jurisdiction overlap, subsequent criminal investigations are often inseparable from prior civil investigations, and perjury in the prior proceeding necessarily obstructs — if successful, by preventing — -the subsequent investigation.” Id. at 94.
Yet, in the case before us, there is no evidence that Thorson made false statements to the IRS agents or created false documents to be produced to the IRS for the purpose of obstructing the civil audit. The official civil inquiry began in March 1998 when a revenue agent initiated a civil examination for the first fraudulent part *334 nership. The government claims that “[t]he partnership’s accountant provided to the revenue agent a contract for the partnership to purchase sites that was dated December 23, 1995.” Resp. Br. at 37. The government then cites to a section of the PSR claiming that “the district court found that the agreement was ‘fabricated,’ ... and ‘provided to the agent to establish falsely that the sites were purchased by the partnership in December 1995 to obstruct the civil audit.’ ” Resp. Br. at 37. While the court adopted the factual findings of the PSR in general, the court never cited to this section nor used it to justify the obstruction enhancement. The court relied solely on the grand jury investigation to support the adjustment. Moreover, the government cites no evidence that this backdated contract dated December 23, 1995, was drafted following the commencement of the audit.
Additionally, the government misleadingly argues now that defendants prepared correspondence during the audit “to foster the false pretense that his use of the funds in the AGH account were non-taxable loans.” Resp. Br. at 38. However, the correspondence the government cites was not produced to the IRS during the audit, but was instead produced in response to subsequent grand jury subpoenas. J.A. 1034. Accordingly, the government’s argument fails on all accounts. Thus, I believe that the district court erred in adjusting Thorson’s sentence for obstruction of justice.
IV.
Because the district court clearly erred in finding that Thorson was a leader or an organizer and that Thorson obstructed justice, I would vacate his sentence and remand for resentencing.[7] Thus, I respectfully dissent.

. This is incorrect. Decker did not refer to himself as a go-fer but instead referred to Johnston as a go-fer for Ross.

. The court nor the PSR distinguishes between the terms "leader” or "organizer.” Because the government treats "leader” and “organizer” as interchangeable and because being classified as either makes one eligible for the adjustment, I need not decide the difference between the two terms. Yet, as we recognized in Sayles, the court was required to decide the issue based on factors set out in the guidelines. 296 F.3d at 224. It did not.

. The government completely misapplies the third factor, the recruiting of accomplices, dedicating four pages of its brief to showing that Thorson sometimes assisted in recruiting investors. In fact, the government incorrectly cites comment note four as factoring in "recruitment of participants," rather than "accomplices." The investors were not accomplices or alleged co-conspirators, and the government conceded as much at oral argument.

. The government’s brief states: “as the district court found, the defendant in this case created these documents for the purpose of obstructing any subsequent investigations.” Resp. Br. at 43 (citing to J.A. 1186). The court did not make this finding. The citation to J.A. 1186 is to paragraph thirty-three of the PSR, within a section entitled "The IRS Audit,” which provides that an agreement was provided to an IRS agent to obstruct the civil audit. There is no mention of a grand jury investigation. Moreover, the district court not once referred to this section of the PSR. The government has repeatedly made such misleading statements to this Court in this case.
The government also cites cases in which defendants set into motion plans to obstruct investigations before they begin, thus warranting adjustments for obstruction of justice. These cases simply are not relevant without a showing that Thorson had such a plan. The falsification of documents before any investigation took place, which was necessary to carry out the scheme of which Thorson was convicted in the first place, does not evidence a plan to thwart a future investigation. Thor-son cooperated with the grand jury investigation at issue.

. The government does not dispute that Thor-son would have been subject to obstruction of justice had he not complied with the subpoenas.

. The Court found that such result would be "especially” improper given that the custodian could not avoid production by invoking the Fifth Amendment.

. I would not reach Thorson’s third issue on appeal — whether the sentence imposed was procedurally unreasonable.